**Bennie DAVIS, Plaintiff,**

v.

**Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 989–H.**

United States District Court
S. D. West Virginia,
at Huntington.

Aug. 16, 1960.

J. Nye King, Jr., Huntington, W. Va., for plaintiff.

Duncan W. Daugherty, U. S. Atty. and Ned O. Heinish, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action under Section 205 (g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a "final decision" of the Secretary of Health, Education and Welfare. The sole question to be considered in this review of that decision is whether there was substantial evidence in the record to sustain the finding that plaintiff is not entitled to establish a period of disability within the meaning of Section 216(i) of the Act, 42 U.S.C.A. § 416(i), because he has not shown his disability was such as to preclude any substantial gainful activity at that time.

Plaintiff claims that he first became disabled in October of 1953. His specially insured status expired in the quarter ending September 30, 1955. On May 24, 1956, plaintiff filed an application to establish a period of disability with the Department of Health, Education and Welfare. This claim was disallowed on November 30, 1956, and following a request for reconsideration was affirmed on March 14, 1957. Plaintiff thereupon asked for a hearing before a referee, and this was held March 17, 1959, at Logan, W. Va. The referee's decision disallowing the claim was entered on April 30, 1959. A request for review was filed by

plaintiff on May 5, 1959, and denied by the Appeals Council on August 18, 1959. Plaintiff was advised by the Appeals Council that he had sixty days in which to seek judicial review of this final decision. On his request, he was granted an extension of time in which to do so, until December 16, 1959. The complaint herein was filed October 16, 1959.

During October, 1953, plaintiff was involved in a hunting accident. A shotgun accidentally discharged, the shot hitting plaintiff's left elbow and destroying it. The result was a "flail" arm in which the forearm and upper arm are connected only by flesh and ligaments, with no contact between the bones of those two parts. It is plaintiff's position that this condition, together with certain other impairments, preclude him from engaging in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration," the test of disability as set forth in Section 216(i) of the Social Security Act, 42 U.S.C.A. § 416(i).

This disability provision has been the basis for judicial review of adverse findings on many occasions. In a large number of such cases, the law has been fully discussed, and a further discussion here would avail nothing. See, e. g., Carpenter v. Flemming, D.C.S.D.W.Va.1959, 178 F.Supp. 791; Pruitt v. Flemming, D.C.S.D.W.Va.1960, 182 F.Supp. 159.

■ This court is precluded from holding a hearing de novo. The findings of the Secretary as to any facts, if supported by substantial evidence, are made conclusive under Section 205(g) of the Act, 42 U.S.C.A. § 405(g). For discussion, see Carpenter v. Flemming, supra.

Plaintiff was born March 16, 1906, and was aged 47 at the time of the hunting accident. He has an eighth grade education, and had been a coal miner all his life, without experience in other lines of work. Since the accident, plaintiff has not worked. He lives alone, and walks to and from Naugatuck—a distance of about two miles each way—almost every day. In addition, he visits his son every month or so, a distance of about twenty miles, traveling by hitch-hiking. Plaintiff raises a small vegetable garden at his home.

Plaintiff claims to have high blood pressure and asthma, in addition to the arm impairment. The medical evidence, as adduced at the referee's hearing, shows that plaintiff was examined and treated by Dr. W. W. Scott, Williamson, W. Va., beginning November 10, 1953, and ending September 22, 1954, for the gunshot wound. Plaintiff's blood pressure was elevated at the time, shown as 188/115 on the Dr. Scott's report prepared June 26, 1956, for the earlier period. The elbow was described as "flail", and the doctor indicated that the arm had atrophied. A section of the medical report set aside for respiratory ailments was marked "No.".

Plaintiff was examined by Dr. S. G. Zando, Williamson, W. Va., on June 25, 1957. Dr. Zando's remarks concerning the elbow were "Flail elbow—no grip— Can't flex past 110°". Blood pressure was noted as 140/80. In a section of the report reserved for comments, it is remarked that arthrodesis (fusion) of the elbow "would markedly increase the function and usefulness of the arm". A signature which appears to be "J. Newton Smith, M.D." is signed to this comment on Dr. Zando's report. The record of the referee's hearing indicates that plaintiff would not consent to a fusion, as this would make the joint immovable, and plaintiff did not want to have a stiff arm for the rest of his life. The medical report further shows that plaintiff had acute respiratory attacks, at night only, with no frequency of attack shown. Dr. Zando comments that plaintiff was "not able to work".

On December 12, 1957, plaintiff was examined by Dr. Walter C. Swann, Huntington, W. Va. Blood pressure was shown as 160/100. Dr. Swann listed his impressions as, "Arteriosclerotic changes, likely affecting the vision; pulmona-

ry fibrosis; destruction of the left elbow joint by gunshot wound; and anxiety neurosis. Right heart strain." Dr. Swann, a specialist in cardiovascular diseases, indicated that an electrocardiogram would be helpful in determining the severity of the pulmonary fibrosis and right heart strain. This was done, and the results were within normal limits. Plaintiff's vision was determined as 20/70, uncorrected. Dr. Swann indicated that he believed plaintiff to be permanently and totally disabled.

Because of the "anxiety neurosis" shown in Dr. Swann's report, a psychiatric examination apparently consisting only of a single interview was had. This examination was made by Dr. G. D. Johnson, Charleston, W. Va., on June 30, 1958. His diagnosis was "Anxiety reaction, severe, superimposed upon mental retardation." No clinical basis for the findings were presented, and there was no indication that plaintiff would be maladjusted in his social or occupational life.

On July 15, 1958, extensive pulmonary function tests were conducted by Dr. Rowland Burns, Huntington, W. Va. The following report was submitted by Dr. Burns:

*"Conclusions:*

"The maximum breathing capacity test varied with the effort of the patient. In multiple examinations one test of satisfactory type was obtained which was 90% of normal.

"Minimal pathophysiological pulmonary changes manifest by:

"1. Slight obstructive ventilatory defect improved by oxygen and Isuprel.

"2. No other significant evidence of disturbance of pulmonary function."

On March 16, 1959, plaintiff was examined by Dr. James M. Whittico, Williamson, W. Va., whose findings were that plaintiff had angina pectoris, congestion of the lungs, arthritis, sciatic neuritis, and impaired vision and hearing. Mental disturbances were shown as negative.

Thus, it appears from all the medical evidence, which is thoroughly discussed in the decision of the referee, that plaintiff suffers from several impairments. Of these, however, the three on which he primarily bases his claim of disability are those of the arm impairment, high blood pressure, and asthma. Two of these can be improved by medication or surgery, and more particularly the function of the left arm could be "markedly" improved by fusion, which plaintiff does not desire. The blood pressure readings, as a whole, do not indicate hypertension to any marked degree. Taken as a whole, this court must conclude that there is substantial evidence to support the findings of the Secretary, and the decision that plaintiff is not entitled to a period of disability must be affirmed.

There is no doubt but that plaintiff cannot follow his former occupation as coal miner. Similarly, it is quite possible that grave difficulties will be presented in finding a job that plaintiff is capable of performing, due to the depressed economic condition of the coal-mining area in which he lives. Plaintiff most certainly has the sympathy of the court, but the disability provisions of the Social Security Act do not take into account the availability of work for those suffering impairments which are not disabling within the meaning of that Act. The actions of this court are confined to the powers given under the act, and as stated above the scope of review is limited narrowly. Under the limitations and directions so imposed, the decision of the Secretary must be affirmed.

Counsel for defendant may prepare an appropriate order for submission to this court.