King B. MEADOWS, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 688.

United States District Court
S. D. West Virginia,
at Bluefield.

Oct. 20, 1962.

754

Wade H. Ballard, III, Peterstown, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

█ This is an action under 42 U.S.C. § 405(g) of the Social Security Act to review the final decision of the Secretary of Health, Education, and Welfare. That decision disallowed plaintiff's claim for a period of disability under 42 U.S.C. § 416(i) and for disability insurance benefits under 42 U.S.C. § 423, and the jurisdiction of this court is limited to a determination of whether that decision was based on substantial evidence. 42 U.S.C. § 405(g). The court is precluded from having a hearing de novo. See Carpenter v. Flemming, D.C.N.D.W.Va., 178 F. Supp. 791.

The Act, 42 U.S.C. § 416(i), provides for eliminating from a person's earning record the period during which he was under a disability in computing his average monthly wage upon which the amount of his benefit is based. A discussion of the elements of this statutory disability is contained in Pruitt v. Flemming, S.D.W.Va., 182 F.Supp. 159. There is no dispute here concerning plaintiff's "insured status" under the Act, and it suffices to say that plaintiff had this "insured status" through December 31, 1960.

On April 22, 1959, the plaintiff filed an application for a period of disability and disability insurance benefits, alleging that he first became unable to work in December, 1957 (at age 49) due to heart and lung conditions. Following unfavorable administrative determinations, plaintiff requested a hearing before a hearing examiner at which he desired to appear in person. The hearing was conducted on March 23, 1961. The decision of the hearing examiner, rendered on April 10, 1961, held that plaintiff was not entitled to the establishment of a period of disability or to disability insurance benefits under the applicable section of the Social Security Act, as amended. On April 24, 1961, plaintiff requested review of the hearing examiner's decision by the Appeals Council. This request was granted, and the Council rendered its decision on September 7, 1961. This decision, with certain modifications, adopted all of the findings and conclusions contained in the decision of the hearing examiner. The decision of the Appeals Council thus became the "final decision" of the Secretary.

The issue in this case is whether there is substantial evidence in the record to support the Secretary's decision that the plaintiff, having the burden of proof, did not show himself unable to engage in any substantial gainful activity as a direct result of a medically determinable impairment which was expected either to result in death or to be of long-continued and indefinite duration.

On April 23, 1959, plaintiff was examined by Dr. T. G. Matney who stated that the plaintiff was weak, had shortness of breath, rales in his lungs, and some dullness in percussion. He diagnosed the condition as probable silicosis or pulmonary tuberculosis. He also noted that very little activity caused dyspnea (shortness of breath) and that he did not take any X-rays, or make any laboratory or pulmonary function tests. At the time of the making of this report he had only seen the plaintiff once before—three weeks prior to the report. His final remarks contained the opinion that the plaintiff was unable to do manual labor and that his condition would not improve.

Plaintiff underwent an X-ray examination on April 15, 1959, given by Dr. T. L. Martin. This examination showed irregular, splotchy areas of increase of density at both lung bases. These are suggestive of some bilateral infection such as a chronic infection like bronchiectasis. The examination further revealed moderate emphysema of the lungs. The lung markings were prominent throughout the lungs bilaterally. The heart was not enlarged, and the mediastinum was within normal limits.

On August 10, 1959, plaintiff was examined by an internist. His report in summary was that plaintiff had been bothered by a back pain for fifteen years, had hemorrhoids, chest pains, and shortness of breath on exertion. Physical examination showed a man who did not appear to be acutely ill. The lungs revealed abnormal breath sounds of a bronchovesicular nature with expiratory roughening. EKG did not disclose any abnormality, but there was moderate tachycardia, and there were occasional ventricular premature contractions. The blood tests indicated an increased white count. The differential between the hemoglobin and the white count was normal. The urinalysis was also normal. The internist concluded, "There is no evidence of cardiovascular disease. However, on physical examination it is apparent that there is pulmonary pathology, the nature of which I am unaware. The increased white count may indicate that some of this is recent, however, I believe X-ray studies of the chest are in order."

The plaintiff was examined by an osteopathic physician on April 4, 1960. This examination revealed a moderate amount of dyspnea on exertion. Auscultation of the chest revealed abnormal rales in the left lobes. This appeared to be either an old unresolved pneumontis or a pneumonconiosis. The tuberculosis patch test was negative. The plaintiff was given penicillin injections. At the time of the last injection, August 14, 1960, he was much improved.

A medical statement was made by Dr. George H. Guy, dated November 28, 1960. His impression was: "(1) Chronic Lung Disease a. Probable Anthracosis b. Emphysema and Bronchitis secondary to a." His opinion was that the plaintiff was unable to perform any gainful employment without untoward effects.

Dr. Guy also testified at the hearing before the hearing examiner. There he reaffirmed his impressions set out in his medical statement and added further that heart sounds were distant, but there were no thrills or murmurs. He aso testified that by history the plaintiff was suffering from coronary arteriosclerosis with angina. Plaintiff was not physically qualified to work further because of his extreme shortness of breath and angina. He admitted that he had nothing on physical examination to support his impression of angina. He felt that it was not necessary to qualify the plaintiff as being unable to work because of the degree of the lung difficulties.

The plaintiff, who has only a third grade education, testified that he last worked in the mines in 1955 at which time the mines were closed. His activities as a coal miner ceased for economic reasons, not because of any physical illness. He began suffering weakness and "smothering spells" in 1957 but continued to work in his own machine shop doing welding and repair work on such things as farm equipment. In 1959 he ceased working altogether because he became so

weak that he could not lift anything. He did not suffer from his lung condition very much until 1958 or 1959. He considers his lung condition to be his greatest difficulty. He smokes two cans of tobacco a week and also drives his car for short distances. He has not been before a silicosis board. His wife testified that plaintiff has done no work for two years. Besides operating a machine shop he has also farmed. Thus his experience is not limited to coal mining. He could undoubtedly work in such a machine shop doing work that did not involve excessive exertion. Such work would indeed be commensurate with his age, experience, training, and education.

The medical evidence of record shows that the plaintiff has a restrictive respiratory impairment which would interfere with his ability to secure employment as a miner. It should here be noted that the degree of this impairment has not been called severe by any of the examining doctors with the exception of Dr. Guy, who made no tests. This doctor based his conclusion partly on a diagnosis of a heart ailment of which he had no clinical evidence. He later withdrew his diagnosis of a heart disease after learning that Dr. Shanklin made heart tests and found no heart disease. The lung condition, the nature of which has not been definitely ascertained, has always been described by such terms as "moderate." It is also quite clear that the plaintiff is not suffering from coronary disease and apparently is not restricted in the use of his extremities and bodily movements.

■ The X-rays taken do not demonstrate that the plaintiff is "disabled" within the meaning of the Act. In fact, the doctor making this examination makes no such statement. It is true that one doctor did conclude that plaintiff was unable to perform any gainful employment without untoward effects. This conclusion of the doctor is clearly not binding on the hearing examiner, the Appeals Council, or this court. The opinions of doctors must be carefully weighed and evaluated in determining the ultimate fact of disability. A flat assertion by a doctor that the claimant is disabled or unable to perform gainful employment is of little, if any, assistance in aiding the arbiter of the facts in arriving at his conclusion concerning disability as contemplated by the Act, especially where such an assertion is not supported by objective findings. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617. Medical evidence shows that plaintiff's physical condition has required only sporadic medical treatment and most of the medical examiners saw him for the first time after he filed his application.

■ This court is not unmindful of the fact that it may be difficult for the plaintiff to find some type of sedentary work (at least work not involving heavy manual labor) in the State of West Virginia for which he could qualify, but this fact cannot be taken into account in determining "disability" within the meaning of the Act. This court in Davis v. Flemming, S.D. W.Va., 186 F.Supp. 79, at 81, said:

"There is no doubt that plaintiff cannot follow his former occupation as coal miner. Similarly, it is quite possible that grave difficulties will be presented in finding a job that plaintiff is capable of performing, due to the depressed economic condition of the coal-mining area in which he lives. Plaintiff most certainly has the sympathy of the court, but the disability provisions of the Social Security Act do not take into account the availability of work for those suffering impairments which are not disabling within the meaning of the Act. * * *"

■ There is substantial evidence of record to support the Secretary's decision that the plaintiff was not under a "disability" as defined in the Act at the time he filed his application on April 22, 1959. Plaintiff's motion for summary judgment is denied. The decision of the Appeals Council that the plaintiff is not entitled to the establishment of a period of disability or to disability insurance benefits for which he filed application is affirmed.