**Millard VANCE, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1138.**

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 10, 1962.

Jack O. Friedman, Charleston, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education and Welfare that he was not entitled to a period of disability and to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is supported by substantial evidence and that the defendant's motion for summary judgment should be granted.

On December 5, 1960, plaintiff, who is even now only 41 or 42 years of age, filed an application to establish a period of disability and for disability insurance benefits.[1] This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On March 28, 1962, a hearing examiner of the Office of Hearings and Appeals of the Social Security Administration also found that plaintiff was not entitled to disability insurance benefits or to a period of disability within the meaning of the Act. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on May 31, 1962.

Plaintiff met the special insured status requirements through September 30, 1954. Therefore, to be eligible for a period of disability and disability insurance benefits under the Act, he had to be disabled on or before September 30, 1954, and after July 1, 1951 (the first day of the period not covered by the prior decision of the Secretary), and such disability, beginning not later than

---

1. Plaintiff previously had filed an application to establish disability on July 14, 1955. Under the law then in effect, plaintiff's insured status expired June 30, 1951. This application was disallowed; and after the Appeals Council denied plaintiff's request for review of the hearing examiner's decision, he failed to request review of that decision by the district court. That decision, therefore, became final and binding as to the period covered therein. This prior application, therefore, is not before the court in this case. Effective August 28, 1958, Public Law 85–840 amended the "insured status" requirements of sections 216(i) and 223 so that when plaintiff filed his application of December 5, 1960, his "insured status" was extended to September 30, 1954. It is plaintiff's condition during this latter period which is at issue in this case.

September 30, 1954, must have continued without interruption until the filing of his application on December 5, 1960. There is substantial evidence in the record to support the finding of the Examiner that plaintiff has failed to meet these requirements.

The medical evidence established that plaintiff, a coal miner at the age of 31, sustained an injury as the result of a slate fall in the mine in which he was working on May 3, 1951. The "fall" caused a compression fracture of the twelfth dorsal vertebra. Following the use of nonsurgical treatment, a spinal fusion operation was performed in November, 1952. Thus there can be no doubt that plaintiff was seriously injured in 1951 and that he was incapacitated for a period of time. The question, however, is whether, after treatment, he has recovered sufficiently to be able physically to pursue any substantial gainful activity.

The record in this case is replete with medical evidence in the form of reports by several orthopedic surgeons, an internist, and a neurologist-psychiatrist. It would serve no useful purpose to attempt to summarize all of this evidence in detail here. Suffice it to say that after examining all of the medical and other evidence of record in this case, there is substantial evidence to support the Secretary's conclusion that plaintiff did not have an impairment or impairments of sufficient severity to prevent him from engaging in any substantial gainful activity. However, for purposes of clarity some of this evidence will be briefly noted below.

Doctor Miyakawa in an examination made in 1958 found that plaintiff was somewhat nervous and there appeared to be practically no motion at the site of the back injury. X-rays, however, revealed no evidence of residual bone injury, and no pathology was visualized. Plaintiff also had retained good function in his arms, and the legs appeared to be within normal limits although there was some hesitation in his gait. Doctor Miyakawa did not feel that plaintiff was

totally and permanently disabled and was of the opinion that he could be rehabilitated to perform sedentary work such as that of a cobbler.

Doctor Heckman, the surgeon who performed the back operation, reported in 1955 that following the surgery he noted as residuals a limitation of back motion, some stooping in the dorsal area, and limited ability to raise his leg. No other pathology was noted. He was also of the opinion that plaintiff had sustained only a twenty-five per cent permanent disability to the body as a whole.

Doctor Holbrook, a specialist in neurosurgery, in 1955, observed that plaintiff was alert and in good contact with reality. The cranial nerves and upper extremities were normal. Other than moderate limitation of motion in the midback, he was unable to make any positive physical findings. He noted that plaintiff limped on his left leg but was unable to determine any physical cause for the limping. His conclusion was that there was no neurological abnormality of any special significance.

In 1959 Doctor Cook observed that except for the limp and a restriction of back motion plaintiff's condition was essentially normal. Despite limited mobility to the left and right, plaintiff was able to bend forward until he reached his knees. He concluded that plaintiff physically was capable of light activity.

There was other medical evidence to the effect that plaintiff had no abnormal lateral curvature of the spine (1958), could bend to within twelve inches of the floor, could walk on his toes and heels (1958), had little or no atrophy in the muscles of the legs, and possessed an essentially normal mental condition. There was no apathy, preoccupation, or indifference. This and other evidence of record clearly is substantial evidence to support the decision of the Secretary that plaintiff was not disabled within the meaning of the Social Security Act.

This court is not unmindful of plaintiff's subjective testimony. But this evidence is certainly not determinative of

the ultimate issue. This evidence, of course, must be considered together with all other evidence. Similarly, this court has not overlooked the fact that plaintiff may not be able to resume his former employment in the mines or that light or sedentary work may be difficult for plaintiff to find in his home area. Plaintiff, in his brief, strongly urged "that a man in Mr. Vance's condition would find it nearly impossible to obtain sedentary work in southern West Virginia." Therefore, it would seem that the primary difficulty of plaintiff in obtaining another job, since it has been shown that he is still capable of performing light or sedentary activity, is attributable to economic and social factors in his community rather than to any physical impairment. Thus, as stated by the Court of Appeals for the Fifth Circuit, in Hicks v. Flemming, 302 F.2d 470 (1962), at 473:

"The hardship here seems to lie more in Hick's inability to find employment than in his incapacity to work. Despite our natural sympathy for Hick's plight, we cannot order unemployment compensation under the guise of disability insurance * * *."

This court also observed in Davis v. Flemming, S.D.W.Va., 186 F.Supp. 79, at 81:

"There is no doubt but that plaintiff cannot follow his former occupation as a coal miner. Similarly, it is quite possible that grave difficulties will be presented in finding a job that plaintiff is capable of performing due to the depressed economic conditon of the coal-mining area in which he lives. Plaintiff most certainly has the sympathy of the court, but the disability provisions of the Social Security Act do not take into account the availability of work for those suffering impairments which are not disabling within the meaning of the Act. * * *"

Since his injury, plaintiff has engaged in different activities. He has resided for some years on a farm of about 15 acres, of which 2 or 3 acres are in cultivation. He has also engaged in the trading or "swapping" business, trading his own commodities, or acting as a middle man for others. Such trading involved everything from horses and cattle to guns. These activities do not amount to substantial gainful activity, but did require the plaintiff to walk, stand and to get about in general, imposing as much strain on his endurance as would light work.

Therefore, since there is substantial evidence to support the Secretary's decision and since plaintiff has failed to meet the criteria set forth in Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962), for establishing the existence of a disabling impairment within the meaning of the Act, defendant's motion for summary judgment is granted.