Paul CLARK, Petitioner–Appellant,

v.

James STINSON, Superintendent,
Respondent–Appellee.

Docket No. 97–2885

United States Court of Appeals,
Second Circuit.

Argued Oct. 18, 1999

Decided June 1, 2000

Ruth M. Liebesman, Law Office of Ruth M. Liebesman, Esq., New York, NY, for Petitioner–Appellant.

Lori Glachman, Assistant District Attorney, Kings County, Brooklyn, N.Y. (Charles J. Hynes, District Attorney, Kings County, Roseann B. MacKechnie, Thomas M. Ross, Assistant District Attorneys, on the brief), for Respondent–Appellee.

Before: MINER, WALKER and KATZMANN, Circuit Judges.

MINER, Circuit Judge:

Petitioner–Appellant Paul Clark appeals from a judgment of the United States District Court for the Eastern District of New York (Trager, *J.*) denying his 1997 petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. Clark was sentenced in 1982 in a New York state court to thirty-three and one-third years to life in prison, a jury having found him guilty of murder, attempted murder, and criminal possession of a weapon. Clark's petition alleges ineffective assistance of appellate counsel, contending that if not for his attorney's failure to raise several meritorious issues on appeal—including Clark's absence from a portion of his pre-trial *Wade* hearing—his conviction would have been reversed. The district court dismissed the petition and denied Clark's motion for a certificate of appealability. This Court granted a certificate of appealability, certifying four questions: 1) whether the petition was filed timely under 28 U.S.C. § 2244(d)(2); 2) whether the one-year limitation imposed by 28 U.S.C. § 2244(d) violates the Suspension Clause; 3) whether the state court's denial of Clark's *coram nobis* petition was contrary to, or an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d)(1); and 4) whether Clark was denied effective assistance of counsel on appeal by his attorney's failure to challenge Clark's exclusion from a portion of his *Wade* hearing. Because respondent-appellee the State of New York (the "State") now concedes the petition was timely, we do not reach the merits of the first or second issues. Because we find no constitutional infirmity in Clark's absence from a portion of his *Wade* hearing, we affirm.

## BACKGROUND

On March 1, 1982, after a week-long jury trial in the Supreme Court, Kings County, New York, Clark was found guilty of two counts of murder in the second degree, attempted murder in the second degree, and criminal possession of a weapon in the second degree in connection with the shooting death of seventeen-year-old Keith Thomas at a block party in Brooklyn on August 23, 1980. At trial, the State established the following: that Clark and co-defendant Mark Taylor exchanged combative words with Thomas and his cousin, seventeen-year-old Albert McLaurin; that Clark then demanded that Taylor pass him a pistol which he used to shoot Thomas, who was struck once in the back of the head and once in the shoulder; that Clark grabbed the gold chains from Thomas' neck as he lay on the ground; and that Clark proceeded to chase and shoot at McLaurin, who managed to get away.

One week prior to trial, the court conducted a *Wade* hearing to consider the admissibility of certain evidence.[1] At the hearing, two eyewitnesses to the shooting were called to identify the defendant. One of those witnesses was McLaurin. He had made photo identifications of Clark and Taylor on two occasions prior to the hearing, and he was expected to make in-court identifications of both defendants at trial. Clark was excluded from the hearing during McLaurin's testimony, pursuant to the following colloquy:

> The Court: Counsel, do you waive production of your client?
>
> [Co-defense counsel]: My client is presently in my office and will be available as soon as we are ready to proceed.

---

1. *See United States v. Wade,* 388 U.S. 218, 236–37, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (holding that the Sixth Amendment mandates presence of counsel to the accused at a post-indictment lineup).

[Counsel for Clark]: I want to make the same application, your Honor.

The Court: Your[ ] client—

[Counsel for Clark]: He is incarcerated.

The Court: Suppose we keep him downstairs.

[Counsel for Clark]: Yes.

The Court: And, we will continue the hearing, and as soon as we are finished with this one witness, we will bring both of the defendants back. Counsel agreed yesterday at a side bar conference that we would continue the hearing at this point without the presence of their clients in the courtroom because they wanted to make certain that any identification that took place would not be re[i]nforced by their presence here at the defense table. You have all agreed; is that correct?

[Co-defense counsel]: That's correct.

[Counsel for Clark]: That is correct, your Honor.

The Court: Call your next witness, counselor.

After McLaurin finished testifying, Clark was brought into the courtroom and was present for the testimony of the second identifying witness, Deborah Ligon. At the direction of the court, Clark also attended his *Sandoval* hearing.[2]

After the jury's guilty finding, Clark was sentenced to prison terms totaling thirty-three and one-third years to life. On appeal, new counsel for Clark argued that 1) an improper comment was made in the state's summation, 2) the reasonable doubt charge was erroneous and confusing, 3) there was insufficient proof of specific intent to steal with regard to the felony murder count, and 4) Clark's sentence was excessive in light of his youth and criminal history. Clark's conviction was affirmed by the Appellate Division. *See People v.*

*Clark*, 128 A.D.2d 798, 512 N.Y.S.2d 1019 (2d Dep't 1987). Leave to appeal to the Court of Appeals was summarily denied. *See People v. Clark*, 70 N.Y.2d 873, 523 N.Y.S.2d 501, 518 N.E.2d 12 (1987).

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, was signed into law. AEDPA established a one-year period of limitation for state court prisoners to petition for a writ of habeas corpus in federal court, *see* 28 U.S.C. § 2244(d), the accrual date running from, *inter alia*, "the date on which the judgment became final by the conclusion of direct review." 28 U.S.C.A. § 2244(d)(1)(A) (West Supp.1999).

Early in January of 1997, Clark filed a petition in state court for a writ of error *coram nobis*, contending that he was deprived of effective assistance of appellate counsel because the four issues raised on appeal were frivolous, while four meritorious issues that would have resulted in reversal of his conviction were not raised. One of the issues that Clark claims should have been raised on appeal was his absence from the *Wade* hearing during the time when testimony was taken from McLaurin. Clark's petition was denied by the Appellate Division on May 5, 1997. *See People v. Clark*, 239 A.D.2d 355, 657 N.Y.S.2d 979 (2d Dep't 1997).

On August 1, 1997—more than ten years after his state court conviction was affirmed on direct review and more than fifteen months after the passage of AEDPA—Clark filed in the United States District Court for the Eastern District of New York the petition for a writ of habeas corpus that is at issue in this appeal. The State moved to dismiss for failure to file timely in accordance with 28 U.S.C. § 2244(d)(1).

In an Order dated October 20, 1997, the district court (Trager, *J.*) found that Clark could have reasonably believed his petition

---

**2.** A pre-trial hearing whereby a defendant, before deciding whether to testify, may seek an advance ruling from the court to prohibit the prosecution's use of prior criminal acts for impeachment purposes, *see People v. Sandoval*, 34 N.Y.2d 371, 374, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974).

was filed timely due to the uncertainty regarding the new law. The court nonetheless found that none of the arguments that Clark contended should have been raised on direct appeal appeared to have any merit, foreclosing his claim that appellate counsel was ineffective. The court concluded that because "petitioner ha[d] not made a substantial showing of the denial of a constitutional right," a certificate of appealability would not issue. *See* 28 U.S.C.A. § 2253(c)(2) (West Supp.1999). Accordingly, judgment dismissing Clark's petition and denying issuance of a certificate of appealability was entered on October 23, 1997.

Clark filed his notice of appeal with this Court on November 25, 1997. A panel of this Court granted his motion on February 3, 1999, certifying the following four issues:

> (1) whether [Clark's] petition for habeas corpus relief was timely filed within the meaning of 28 U.S.C. § 2244(d)(2), including any period of tolling; (2) whether the one-year filing limitation imposed by 28 U.S.C. § 2244(d) violates the Suspension Clause of the United States Constitution, art. I, § 9, cl. 2; (3) whether the decision by the state Appellate Division denying [Clark's] *coram nobis* petition was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, 28 U.S.C. § 2254(d)(1), *see O'Brien v. Dubois*, 145 F.3d 16, 21 (1st Cir.1998); and (4) whether [Clark] was denied effective assistance of counsel on his direct state appeal by appellate counsel's failure to raise the issue of [Clark's] absence from a portion of his *Wade* hearing.

This appeal followed.

## DISCUSSION

■ We review the denial of a writ of habeas corpus *de novo*. *See Bobb v. Senkowski*, 196 F.3d 350, 352 (2d Cir.1999) (citing *English v. Artuz*, 164 F.3d 105, 108 (2d Cir.1998)).

■ While we agree with the district court that Clark's petition was timely filed, the State no longer raises any objection to the time of filing, rendering that issue moot. The State concedes on appeal that our intervening decision in *Ross v. Artuz*, 150 F.3d 97 (2d Cir.1998), is controlling. There we held that regardless of the date when judgment against them had become final, prisoners in custody when AEDPA was enacted were to be afforded a grace period of one year after its effective date in which to file a first request for habeas relief, either as a petition under § 2254 (prisoners in state custody) or as a motion under § 2255 (prisoners in federal custody). *See* 150 F.3d at 102–03. Thus, we established the general rule that a prisoner had until April 24, 1997 to avail him or herself of habeas relief in federal court. In some cases, however, a prisoner in state custody may bring a petition after the April 1997 deadline and still comply with the statutory period, because of the new law's tolling provision: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation …" 28 U.S.C.A. § 2244(d)(2) (West Supp.1999). In this case, the four months that Clark's petition for a writ of error *coram nobis* was pending in New York are not counted toward the statutory limit. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000) (holding that the "tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run"). Accordingly, Clark's petition was timely, and the State is correct not to challenge it on that ground. Because the timeliness issue is moot, we need not address the Suspension Clause issue. We note in passing, however, that intervening decisions in this Circuit have largely settled the matter.[3]

---

**3.** *See Rodriguez v. Artuz*, 990 F.Supp. 275, 282–83 (S.D.N.Y.1998) (holding that one-year

We turn then to Clark's contentions that his absence from a portion of his *Wade* hearing violated his right to be present at trial and that his appellate counsel's failure to raise that issue on direct review violated his right to effective assistance of counsel.

## I. *Standard of Review*

Our task as a federal habeas court is to determine whether the denial by the Appellate Division of Clark's ineffective assistance of appellate counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C.A. § 2254(d)(1) (West Supp.1999). At the time we granted Clark a certificate of appealability, the applicable standard of review was uncertain in this Circuit. *See Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999) (declining to decide the extent to which § 2254(d)(1) permits *de novo* review). The Supreme Court has now articulated such a standard. *See Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 1518–23, 146 L.Ed.2d 389 (2000).

■ In *Williams,* the Court endorsed in large part the Fourth Circuit's interpretation of this subsection. *See id.* at 1519–22 (discussing *Green v. French,* 143 F.3d 865 (4th Cir.1998), *cert. denied,* 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999)). First, the Court agreed with the Fourth Circuit that the "contrary to" and "unreasonable application" phrases are properly accorded independent meanings. *See id.* at 1519. Second, the Court adopted *Green*'s construction of the "contrary to" prong, *see id.,* and held that a federal court is unconstrained from granting the writ of habeas corpus either 1) "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law," or 2) "if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 1523.

■ The Court adopted only partially, however, the Fourth Circuit's interpretation of the "unreasonable application" prong. *See id.* at 1520. ("The Fourth Circuit's interpretation of the 'unreasonable application' clause of § 2254(d)(1) is generally correct.") The Court noted that the Fourth Circuit in *Green* had held that a decision of a state court can involve an "unreasonable application" of Federal law in two ways: 1) "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or 2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* (citing *Green,* 143 F.3d at 869–70). The Court stated that the first category of cases "certainly would qualify" as an unreasonable application of Federal law under § 2254(d)(1), *id.,* but it declined to decide how the second category of cases should be treated under the subsection. *See id.* at 1521. The Court concluded that, "[f]or now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." *Id.*

In construing the meaning of "unreasonable," the Court rejected the holding in *Green* that "a state-court decision involves an 'unreasonable application of . . . clearly established Federal law' only if the state court has applied federal law 'in a manner

limit placed on state court prisoners for filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 does not violate the Suspension Clause), *aff'd,* 161 F.3d 763 (2d Cir.1998) (per curiam) (affirming for "substantially the reasons stated by the district court"); *see also Weaver v. United States,* 195 F.3d 123, 125 (2d Cir.1999) (per curiam) (citing *Rodriguez* with approval and holding that one-year limitation on federal prisoners to bring a motion for habeas relief under 28 U.S.C. § 2255 is not a *per se* violation of the Suspension Clause).

that reasonable jurists would all agree is unreasonable,'" and adopted instead an "objectively unreasonable" standard as the decisional guide. *See id.* (quoting *Green,* 143 F.3d at 870) (ellipsis in *Williams*). The Court emphasized that "unreasonable" is different from "incorrect" or "erroneous" in this context, stating that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 1522. The Court determined that the language of the subsection echoed a debate central to the diverse opinions it issued in *Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992): "whether, in reviewing a state-court decision on a state prisoner's claims under federal law, a federal habeas court should ask whether the state-court decision was correct or simply whether it was reasonable." *Id.* at 1522–23. The Court concluded that

> § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.... Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 1523. In accordance with this new guidance, we find that the decision of the Appellate Division to deny Clark's *coram nobis* motion was not an unreasonable application of clearly established Supreme Court precedent to the facts at hand.

### II. *The Merits of the Ineffective Assistance of Counsel Claim*

■ In order to prevail on an ineffective assistance of counsel claim, a defendant must first show that his counsel's performance was deficient and must then show that the deficiency caused actual prejudice to his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The deficiency prong is established by showing that the attorney's conduct fell "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. 2052. The prejudice prong is established by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. This two-prong test applies to the evaluation of appellate counsel as well as trial counsel. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994); *Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992); *Abdurrahman v. Henderson,* 897 F.2d 71, 74 (2d Cir.1990).

It is because of the second prong of the *Strickland* test that Clark must show here that the outcome of his appeal would have been different had counsel raised the issue of Clark's absence from his *Wade* hearing. Had a reviewing court ruled in Clark's favor, it apparently would have reversed and remanded for a new trial. *See People v. Anderson,* 16 N.Y.2d 282, 288, 266 N.Y.S.2d 110, 213 N.E.2d 445 (1965) (unwaived absence from pre-trial evidentiary hearing).[4] We need not, however, resolve that question, as Clark's argument fails the first prong of the *Strickland* test.

■ In evaluating the evidence of whether an attorney's representation of a criminal defendant is deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *see Bloomer v. United States,* 162 F.3d 187, 193 (2d Cir.1998). Clark has failed to demonstrate to this Court that his appellate counsel's advocacy rebuts that presumption, viewed through the lens of ei-

---

**4.** We note that it is highly doubtful that the outcome of a new trial for Clark would be any

different.

ther federal or New York law. We here examine the potential state law claims only as a subset of the ineffective assistance of appellate counsel question, because that is what the Appellate Division was required to do in ruling on the merits of Clark's claim. We are guided in our review by the following:

> In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. *See Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983). However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.

*Mayo,* 13 F.3d at 533. We note that the Appellate Division cited *Jones* in its summary disposition denying Clark's *coram nobis* petition, and accordingly invoked the correct legal principle at issue. This places our review of the denial of Clark's habeas petition squarely within the "unreasonable application" prong of § 2254(d)(1). Because we do not find it obvious on this record that a constitutional violation occurred at the *Wade* hearing, under either the federal or state constitutional standard, we likewise find the decision of the New York court to be a reasonable application of federal decisional law as set forth by the Supreme Court.

■ The principle that the accused has a right to be present at all material stages of trial inheres in the confrontation clauses of the United States and New York Constitutions and is articulated in both federal and state rules of procedure. *See* U.S. Const. amend. VI; N.Y. Const. art. I, § 6; Fed.R.Crim.P. 43; N.Y.Crim. Proc. Law §§ 260.20, 340.50 (McKinney 1993, 1994). *See also Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *People v. Parker,* 57 N.Y.2d 136, 139, 454 N.Y.S.2d 967, 440 N.E.2d 1313 (1982); *People v. Mullen,* 44 N.Y.2d 1, 4–5, 403 N.Y.S.2d 470, 374 N.E.2d 369 (1978).[5] In construing the scope of the right, the New York Court of Appeals has held that pre-trial hearings where testimony is taken and questions of fact are to be determined are included in the definition of "trial." *See Anderson,* 16 N.Y.2d at 288, 266 N.Y.S.2d 110, 213 N.E.2d 445. However, "in the argument of a motion to decide a pure question of law, no right to be present inures to a defendant." *Id.* Federal law observes the same law-fact dichotomy in determining when the right to be present attaches. Rule 43 of the Federal Rules of Criminal Procedure states that the defendant need not be present at "a conference or hearing upon a question of law." Fed.R.Crim.P. 43(c)(3). "If fact issues are presented, however, as they often will be on a pretrial motion to suppress evidence or on some motions for new trial, it would seem that defendant has a right to be present." 3A Charles Alan Wright, Federal Practice and Procedure § 721.1 at 12 (2d ed.1982). Presence at a pre-trial *Wade* hearing, such as the one at issue here, clearly falls within the scope of the right.

■ While the scope of the right is broad, its application is not absolute. The New York Court of Appeals has stated that "whether the mandate requiring the presence of a defendant at the trial of his indictment stems from due process or statute, literal application of its directive is not demanded. Common sense dictates that substantial performance of its terms is sufficient." *Mullen,* 44 N.Y.2d at 5–6, 403 N.Y.S.2d 470, 374 N.E.2d 369 (holding that *in camera* questioning of one juror out of defendant's presence did not constitute

---

**5.** The right also flows from the guarantee to a fair trial articulated by the due process clauses of the Fifth and Fourteenth Amendments.

*See Polizzi v. United States,* 926 F.2d 1311, 1318 (2d Cir.1991).

material stage of trial). This flexible "modern" view is the result of a gradual dilution of the unequivocal common-law position that the right was absolute and could not be waived. *See People v. Epps,* 37 N.Y.2d 343, 349, 372 N.Y.S.2d 606, 334 N.E.2d 566 (1975) (recounting the history of New York constitutional and statutory guarantees of right to be present and compiling cases). This margin for flexibility reflects the view taken under federal law that the defendant's presence at trial is required "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts,* 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (Cardozo, *J.*), *overruled on other grounds by Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Under this standard, the defendant's absence is reversible error only where it would have a "relation, reasonably substantial, to his opportunity to defend." *Id.* at 105–06, 54 S.Ct. 330. *See also People ex rel. Lupo v. Fay,* 13 N.Y.2d 253, 256–257, 246 N.Y.S.2d 399, 196 N.E.2d 56 (1963) (citing *Snyder* and holding that defendant's absence from his counsel's argument for a mistrial was not reversible error because it did not "affect any substantial right of his"); 3A Wright, *supra,* § 721.1 at 12 (stating that in some instances defendant's absence even from evidentiary hearings can be regarded as harmless error).

▮ The right to be present at one's own trial is "clearly waivable under both the Federal and State Constitutions." *Epps,* 37 N.Y.2d at 349, 372 N.Y.S.2d 606, 334 N.E.2d 566. *See Taylor v. United States,* 414 U.S. 17, 19–20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); *Allen,* 397 U.S. at 342–43, 90 S.Ct. 1057; *Snyder,* 291 U.S. at 106, 54 S.Ct. 330; *Diaz v. United States,* 223 U.S. 442, 455, 32 S.Ct. 250, 56 L.Ed. 500 (1912); *People v. Byrnes,* 33 N.Y.2d 343, 349, 352 N.Y.S.2d 913, 308 N.E.2d 435 (1974); *People v. Bragle,* 88 N.Y. 585, 589–90 (1882). Because this right may be waived, we agree with the State that the gravamen of Clark's ineffective assistance of appellate counsel claim is not whether

he was unconstitutionally deprived of his right to be present at trial but whether he can be said to have waived that right in a constitutionally permissible fashion. In answering this question, we examine federal law and New York law in turn, for while both jurisdictions require that the relinquishment of the defendant's right to be present at trial be knowing and voluntary, *see, e.g., Polizzi,* 926 F.2d at 1319, *Epps,* 37 N.Y.2d at 349–50, 372 N.Y.S.2d 606, 334 N.E.2d 566, New York has developed the more stringent standard for showing such a waiver.

▮ Under federal law, a defendant can waive his right to be present at trial expressly or by voluntarily failing to appear. *See, e.g., Taylor,* 414 U.S. at 20, 94 S.Ct. 194; *United States v. Mera,* 921 F.2d 18, 20 (2d Cir.1990) (per curiam). While Rule 43 of the Federal Rules of Criminal Procedure prohibits trials *in absentia* where the defendant is not present at the beginning of trial, *see Crosby v. United States,* 506 U.S. 255, 262, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), we have recently held that "nothing in the Constitution prohibits a trial from being commenced in the defendant's absence so long as the defendant knowingly and voluntarily waives his right to be present." *Smith v. Mann,* 173 F.3d 73, 76 (2d Cir.1999). To be sure, the question of a defendant's absence from just a portion of a pre-trial hearing presents a different factual scenario than that posed when a trial judge must consider whether to try a defendant *in absentia;* nonetheless, the question of a voluntary and knowing waiver is paramount in either circumstance.

▮ A voluntary and knowing waiver of the right to be present can be "implied from the defendant's conduct." *United States v. Nichols,* 56 F.3d 403, 416 (2d Cir.1995); *see United States v. Mackey,* 915 F.2d 69, 72 (2d Cir.1990). With regard to a defendant's absence from a portion of his trial, failure to readily object at the time the decision is made to proceed without the accused can constitute a waiv-

er. *See United States v. Gagnon,* 470 U.S. 522, 528–29, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (holding that defendant waived his right to be present at an *in camera* hearing when no objection was made at trial). We have held that a defendant's behavior constituted an implied waiver of his right to observe voir dire where there was no evidence of purposeful exclusion by the trial judge, and where the judge could have reasonably concluded that if the defendant's rights were being violated, he or his counsel would have said so. *See Cardinal v. Gorczyk,* 81 F.3d 18, 20 (2d Cir. 1996). *Cf. United States v. Hernandez,* 873 F.2d 516, 518–19 (2d Cir.1989) (holding that where absentee defendant offers a seemingly valid excuse, the trial court must inquire into the circumstances of his absence to determine whether he has knowingly and voluntarily absented himself).

The trial court is not free, of course, to impute a waiver in any conceivable circumstance. In *Mackey,* we refused to find a knowing and voluntary waiver of the defendant's right to be present on the first day of trial, which included jury impanelment and testimony by two prosecution witnesses, where the record showed that the defendant was absent for part of that day due to transportation difficulties about which he had advised the court. *See* 915 F.2d at 73–74. We have explicitly repudiated a rule, however, that would require a defendant's personal statement in court to bring about a constitutionally valid waiver of his right to be present. *See Polizzi v. United States,* 926 F.2d 1311, 1322 (2d Cir.1991). "Although it is certainly preferable that the waiver come from the defendant directly, there is no constitutional requirement to that effect." *Id.* (citing *United States v. Crutcher,* 405 F.2d 239, 244 (2d Cir.1968)).

Furthermore, "[w]e have not decided specifically whether and under what circumstances defense counsel may waive a defendant's right to confrontation," but we have said that the "rights that defense counsel may waive on behalf of defendant [are those that] concern strategic and tactical matters." *United States v. Plitman,* 194 F.3d 59, 63 (2d Cir.1999). The Supreme Court has recently reiterated that "[w]hat suffices for waiver depends on the nature of the right at issue." *New York v. Hill,* —— U.S. ——, 120 S.Ct. 659, 664, 145 L.Ed.2d 560 (2000) (holding that defense counsel can effectively waive a defendant's right to be brought to trial on a specified date under the Interstate Agreement on Detainers). The Court noted the difference between a) "certain fundamental rights," which require a defendant's personal waiver, and b) other "decisions pertaining to the conduct of the trial," which the attorney may make and to which the defendant is deemed bound. *Id.* As examples of the former, the Court cited the right to representation by counsel and the right to plead not guilty; for the latter, the Court cited decisions by counsel concerning what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. *See id.*

Given this precedent, we have no difficulty finding under the facts of the instant case that Clark's right to be present at his *Wade* hearing was voluntarily and knowingly waived. Although there is no record waiver by Clark personally, the court in its colloquy with defense counsel alludes to a conversation that was held the day before in which "[c]ounsel agreed yesterday at a side bar conference that we would continue the hearing at this point without the presence of their clients in the courtroom because they wanted to make certain that any identification that took place would not be re[i]nforced by their presence here at the defense table." We reject Clark's contention that this statement by the court shows that his defense attorney "merely acquiesced" in the court's suggestion that he be kept out of the courtroom. The statement indicates that Clark's absence was intentional, with the tactical purpose of depriving McLaurin of an additional opportunity to identify Clark.

We therefore hold that the colloquy on the record in this case, unaccompanied by any contemporaneous objection or other evidence indicating an involuntary or unknowing waiver, is sufficient, under federal law, to establish a valid waiver of Clark's right to be present during the portion of the *Wade* hearing when testimony was taken from McLaurin. *See generally United States v. Dunlap,* 577 F.2d 867, 868 (4th Cir.1978) (holding that a waiver could be inferred where defendant swore on appeal that he did not recall a conversation with counsel regarding the decision not to attend a pre-trial identification hearing, but where the record revealed that his counsel contemporaneously informed the court of such a conversation).

■ We reach the same conclusion in our analysis of New York state law on this subject. The New York Court of Appeals has also rejected a blanket rule requiring a defendant to make personal representations to the court in order to effect a voluntary and knowing waiver of the right to be present at a material stage of trial. "The issue of voluntariness is a question of fact which should not be resolved by per se formulations." *Epps,* 37 N.Y.2d at 350, 372 N.Y.S.2d 606, 334 N.E.2d 566. In *Epps,* the defendant returned to his prison cell on day two of the trial and thereafter refused to come back to the courtroom, having apparently joined in a boycott of the courts by inmates at the Brooklyn House of Detention. *See id.* at 346–47, 372 N.Y.S.2d 606, 334 N.E.2d 566. The defendant was absent for most of the trial, including the testimony of several key witnesses and the closing statements of counsel. After a guilty verdict and before sentencing, the defendant moved to vacate and for a new trial, and the motion was denied. *See id.* at 348, 372 N.Y.S.2d 606, 334 N.E.2d 566. The Court of Appeals affirmed, finding that because correction personnel repeatedly warned the defendant, at the court's instruction, that the trial was going to continue without him, the inevitable conclusion was that his absence was voluntary. *See id.* at 350, 372 N.Y.S.2d 606, 334 N.E.2d 566. The court

specifically rejected the defendant's argument that it was "incumbent on the court to have the accused brought before the court and ... state his waiver on the record." *Id.* at 350–51, 372 N.Y.S.2d 606, 334 N.E.2d 566. The court noted the absence of any hint of an "official conspiracy to deprive this inmate of his right to be present and confront witnesses," in holding that a waiver could be implied from the circumstances. *Id.* at 350, 372 N.Y.S.2d 606, 334 N.E.2d 566.

In *People v. Parker,* 57 N.Y.2d 136, 454 N.Y.S.2d 967, 440 N.E.2d 1313 (1982), decided four months after Clark's sentencing, but before his appeal was heard, the Court of Appeals was again presented with the question of a defendant's absence from trial. At issue in *Parker* was whether a defendant could be tried *in absentia* after receiving notice of her trial date but failing to appear. The trial court had set the case for trial on a Friday, but postponed trial when counsel informed the court that the defendant was seriously ill and unable to either meet with counsel before the trial or attend the trial. The court adjourned the matter until the following Monday, at which time counsel informed the court that he had been unable to locate the defendant. After holding a hearing to ascertain the defendant's whereabouts, the trial court found that her absence was voluntary and tried her *in absentia.* The Court of Appeals ordered a new trial, concluding that "the trial court's factual finding of voluntary absence from court on the day scheduled for her appearance [was] alone insufficient as a matter of law to establish an implicit waiver of defendant's right to be present at trial." *Id.* at 139, 454 N.Y.S.2d 967, 440 N.E.2d 1313.

The Court of Appeals distinguished *Epps* by noting that the defendant there had been told that trial would proceed without him, and concluded that an effective waiver required that "the defendant must, at a minimum, be informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear ... This, of course, in turn requires that defendant simply be

aware that trial will proceed [in his or her absence]." *Id.* at 141, 454 N.Y.S.2d 967, 440 N.E.2d 1313. The court stressed that the record before it was "devoid of any evidence indicating that defendant was ever apprised or otherwise aware that her trial would proceed in her absence." *Id.* Moreover, the court concluded that "nothing in the record provide[d] a basis for implying a waiver as a matter of law from the circumstances." *Id.*

The Court of Appeals thus imposed a standard for implied waiver of defendant's presence at trial that includes a showing that the defendant was "informed in some manner of the nature of the right to be present at trial and the consequences of failing to appear." *Id.* Subsequent to *Parker*, Appellate Divisions, in cases decided prior to the argument of Clark's appeal, began routinely to note the "fundamental constitutional nature" of the right to be present at trial. *See, e.g., People v. Gilbert*, 96 A.D.2d 648, 466 N.Y.S.2d 750, 751 (3d Dep't 1983) (reversing a conviction where the record did not establish that "defendant was advised that . . . the trial would proceed without him"); *People v. Thompson*, 94 A.D.2d 898, 463 N.Y.S.2d 650, 652 (3d Dep't 1983) (reversing defendant's conviction because the record was "devoid of any evidence demonstrating that defendant was in any manner notified or cognizant that his trial would proceed in his absence").

The impact of *Parker* in the years prior to Clark's appeal was notable only in the context of a defendant's trial *in absentia*. After Clark's appeal was heard, the *Parker* rule on waiver was applied to pre-trial hearings.[6] In some of those cases the New York courts found an implied waiver in circumstances very similar to Clark's. *See, e.g., People v. Freeman*, 202 A.D.2d 988, 609 N.Y.S.2d 721, 721 (4th Dep't 1994) (finding a knowing and voluntary waiver from "the colloquy between defense counsel and [the trial court]" which demonstrated that the defendant's absence was "a strategic one to prevent eyewitnesses from reinforcing their recollections by viewing him at the hearing," where the defendant was present at a pre-trial hearing for the testimony of witnesses on the issue of probable cause but was absent for the testimony of identification witnesses); *People v. Closure*, 202 A.D.2d 985, 609 N.Y.S.2d 470, 471 (4th Dep't 1994) (finding that defense counsel's assent to prosecutor's statement that defendant, who was in court, wished to waive his right to be present during the testimony of one identification witness to prevent the witness from having "further opportunity to view him at this time," was an effective waiver). These latter-day cases are not pertinent to Clark's case, as they were decided long after his appeal, but we note them to show that the New York courts continue to apply a fact-sensitive analysis to decide the voluntariness of a defendant's waiver, particularly where the defendant misses only a portion of a pre-trial hearing.[7]

---

6. After Clark's appeal, the Court of Appeals held, for example, that the failure by a defendant to object to his absence from a portion of voir dire in which jurors were examined for possible bias and prejudice was not fatal to his claim on appeal that his fundamental right to be present at a material stage of trial had been violated. *See People v. Antommarchi*, 80 N.Y.S.2d 247, 251, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992). *Cf. Cardinal*, 81 F.3d at 20 (defendant's failure to object amounted to a waiver only because he was aware of his right to be present as a result of his participation at a prior trial).

7. In other post-*Parker* cases, New York courts have not found a waiver of the right to be present at a pre-trial hearing, but we note that those cases were likewise decided *after* the 1987 entry of judgment in Clark's appeal. *See, e.g., People v. Brockenshire*, 197 A.D.2d 921, 602 N.Y.S.2d 459, 459–60 (4th Dep't 1993) (finding that defense counsel's consent to defendant's absence did not permit an inference of knowing and voluntary waiver of the right to be present at a *Sandoval* hearing); *People v. Gaines*, 144 A.D.2d 941, 534 N.Y.S.2d 257, 258–59 (4th Dep't 1988) (reversing a conviction where "the court did not expressly find that the defendant had validly waived his right to be present [at a *Wade* hearing], but merely purported to grant counsel's waiver of that right on behalf of defendant").

Although New York's standard for waiver at the time Clark's appeal was being prepared creates a closer question than that posed by the application of federal law, we find that the circumstances of Clark's absence from a portion of his *Wade* hearing do not suggest that the *Parker* standard was not met in this case.[8] The controlling principle in *Parker* was that of notice: a reviewing court should be confident that an absent defendant had been apprised, "in *some* manner," of the consequences of his absence. "This ... requires that defendant simply be aware that trial will proceed even though he or she fails to appear." *Parker*, 57 N.Y.2d at 141, 454 N.Y.S.2d 967, 440 N.E.2d 1313 (emphasis added). Although the record on habeas review is scant, it reveals that Clark was aware that the *Wade* hearing was going to be conducted while he was in the courthouse lock-up. It appears that Clark knew full well that the *Wade* hearing was taking place, and that it was much to his benefit for the identification testimony of McLaurin to be taken in his absence. Contrary to *Parker*, the record here does provide a basis for implying waiver as a matter of law under the circumstances.

It is not only the colloquy itself between the court and counsel on the morning of the pre-trial hearing, but also the facts surrounding that colloquy that support this conclusion. The colloquy refers to a sidebar conference that had been held the day before, when Clark had been present in the courtroom. Clark may not have been privy to the actual sidebar, but it can be assumed that when he was in court, he and his counsel must have discussed what happened at the sidebar or what the next day was to bring in terms of evidence, testimony, and legal motions. Indeed, the colloquy alludes to the fact that "they" agreed they did not want to be present, and it is clear from the context that "they" referred to both the attorneys *and* their clients. Finally, the absence of any contemporaneous objection is strongly suggestive that the absence was acceptable to Clark at the time.

Perhaps the most compelling fact that leads us to conclude that Clark was aware of what was happening in his absence is the importance of the witness whose testimony he missed. Not only was McLaurin an eyewitness who had already identified Clark in a photo line-up and who was expected to identify him at trial, but he was the victim's cousin who stood next to the victim when he was shot and who was then chased and fired at by the gunman. The defense would reasonably want to avoid an encounter between the accused and the witness whose identification testimony was to prove so damaging. Clark's presence during the subsequent Ligon testimony supports the view that he and his attorney chose to minimally restrict his confrontation rights and further mitigates any concern that Clark's right to be present was casually disregarded. Furthermore, his presence during the latter portion of his *Wade* hearing and during his *Sandoval* hearing rules out "the slightest hint of official connivance or obstruction with respect to the defendant's right to be present." *Epps*, 37 N.Y.2d at 350, 372 N.Y.S.2d 606, 334 N.E.2d 566.

Given this most probable interpretation of how Clark came to be absent from a portion of his pre-trial *Wade* hearing, it is not difficult for us to understand why Clark's appellate attorney, presented with a more factually complete record than the one reaching us on federal habeas review, would choose not to press the Sixth Amendment argument on direct review. Appellate counsel had no reason to identify a *Parker* problem at all, since that case dealt with a trial that was conducted wholly *in absentia*, while Clark was only absent

---

8. We emphasize that we only examine New York precedent because we find that such an examination is necessary to our determination of whether New York's rejection of Clark's ineffective assistance of appellate counsel claim was a reasonable application of Supreme Court precedent. In other words, the state law of waiver here constitutes part of "the facts of a prisoner's case," to which we must look in determining whether *Strickland* and *Jones* were reasonably applied. *Williams*, 120 S.Ct. at 1523.

**328**

from a portion of a pre-trial hearing. Counsel on appeal would also have seen what we can see here, that the decision to absent Clark from McLaurin's testimony was made solely to benefit the defendant, and would have known that an appellate court might well not be receptive to the argument that his client's rights had been violated as a result of an absence that was purposely procured. Appellate counsel would also have known that *Parker* permitted a waiver to be implied, where the record supports such an inference, maintaining the rule in *Epps* that the voluntariness of a defendant's absence is not resolvable by *per se* formulations. *See* 37 N.Y.2d at 350, 372 N.Y.S.2d 606, 334 N.E.2d 566. The attorney who searched this record on appeal could only have determined, in noting Clark's absence during the McLaurin testimony, that his Sixth Amendment right to be present at trial was not actually compromised.

For all the foregoing reasons, we find no merit in Clark's contention that his appellate counsel was ineffective for failing to challenge his exclusion from a portion of his *Wade* hearing on direct review. As we have stated,

> [w]hen a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (quotation marks and citation omitted). Appellate counsel in this case quite competently chose to focus on four arguments—that the prosecution made an improper comment during summation, that the jury charge on reasonable doubt was flawed, that the evidence was insufficient to support the felony murder count, and that the sentence was excessive in light of

Clark's young age and criminal history—that were not "clearly and significantly weaker" than the waiver claim. *Id.* This is not a situation where counsel overlooked a "sure winner" and focused only on clearly losing arguments. *See Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998).

## CONCLUSION

Because Clark has failed to establish that his appellate counsel's representation was outside the bounds of reasonable attorney performance, he has made no showing of a denial of a constitutional right. We therefore affirm the order of the district court denying Clark's petition for a writ of habeas corpus.