Lorenzo FLORES, Petitioner,

v.

John P. KEANE, Superintendent, Sing Sing Correctional Facility, Respondent.

No. 94 Civ. 5096(RMB)(MHD).

United States District Court, S.D. New York.

June 13, 2001.

Lorenzo Flores, Ossining, NY, pro se.

### DECISION AND ORDER

BERMAN, District Judge.

## I. Introduction

On or about January 27, 1997, Lorenzo Flores ("Flores" or "Petitioner") filed a petition *pro se*, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus in the United States District Court, Southern District of New York ("Petition"). Flores had been convicted, following a jury trial, on January 31, 1989, in New York State Supreme Court, Bronx County, of Murder in the Second Degree (N.Y. Penal Law § 125.25[2]) and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01) and was sentenced to concurrent prison terms of twenty-five years to life on the murder conviction and one year on the weapon charge. The jury convicted Flores of stabbing Jose Amaro ("Amaro") to death on December 10, 1987 during an altercation which took place outside of a Bronx social club and which was

witnessed by several people.[1] Magistrate Judge's Report and Recommendation, dated Dec. 19, 2000 at 2 ("Report") ("The altercation took place outside a Bronx nightclub and was witnessed by several acquaintances of Amaro and other onlookers. Following the stabbing by petitioner, he fled in a car. The police later arrested him, and two of the eyewitnesses identified him at a lineup.").

Petitioner asserts two grounds for habeas relief: (i) deprivation of his due process right to a fair trial by virtue of the prosecutor's allegedly "improper" remarks on summation;[2] and (ii) denial of his Sixth Amendment rights by virtue of alleged ineffective assistance of his appellate counsel.[3]

On December 19, 2000, the Honorable Michael H. Dolinger, United States Magistrate Judge, Southern District of New York, to whom the matter had been (re)assigned, issued a Report and Recommendation recommending that the Petition be denied on the merits and dismissed with prejudice. Report at 11 ("We first address the summation claim and then turn to the various Sixth Amendment claims pressed by the petitioner. We conclude that all of the claims are plainly merit-

less."). Petitioner timely filed objections to the Report ("Objections" or "Pet.'s Obj."), dated January 4, 2001;[4] Respondent John P. Keane, Superintendent of Sing Sing Correctional Facility, ("Respondent") has not filed any objections.

By order dated March 29, 2001, the Court directed that Magistrate Dolinger "elicit, by way of affidavit or hearing, the views of Petitioner's appellate counsel, Steven C. Losch, formerly Staff Attorney, Legal Aid Society of the City of New York ['Legal Aid Society'] and Philip L. Weinstein, formerly Attorney in Charge, Legal Aid Society, on the 'ineffectiveness' issues alleged herein by Petitioner." *Flores v. Keane*, No. 94 Civ. 5906 (S.D.N.Y. March 29, 2001). Mr. Losch responded by affidavit dated April 26, 2001. Affidavit of Steven C. Losch, dated April 26, 2001 (Losch Aff.) ("I do not believe that Mr. Flores was denied effective assistance of counsel under the *Strickland v. Washington* standard . . ."). Mr. Weinstein responded by affidavit dated April 4, 2001. Affidavit of Phillip L. Weinstein, dated April 4, 2001. On May 4, 2001, Magistrate Dolinger issued a Report and Recommendation ("Supplemental Report" or "Supp. Report"), concluding that "[b]ased on [the submissions

---

1. "Flores nonetheless pursued Amaro with a knife, and then stabbed his victim repeatedly while shouting insults and insisting that he was going to kill him." Report at 3.

2. Petitioner claims that several of the prosecutor's comments on summation "seriously misstated the evidence" and that these inaccuracies were "so egregious as to deny him a fair trial." Report at 12. Petitioner argues that "the prosecutor manipulated the conflicting testimony of his own witnesses to create the false impression that they all saw appellant threaten to kill and then repeatedly stab a helpless victim on the ground." Petitioner's Appellate Brief at 17 ("Pet.'s App. Brief"). Petitioner also claims that the prosecutor improperly argued during summation that defense counsel was like an "octopus" which

"[w]hen attacked and fearful, . . . releases a dye in the water, clouds the water and basically allows it to slip off undetect[ ]ed by its prey." Report at 22.

3. Petitioner raises two claims of ineffective assistance of appellate counsel, i.e., that appellate counsel should have argued that a reversal was warranted (1) "by the trial court's refusal to uphold a 'for cause' challenge to one member of the jury panel;" and (2) "by the ineffective assistance rendered by the trial attorney." Report at 24.

4. Petitioner filed his objections in the form of an affidavit, sworn to on January 4, 2001, annexed to a Notice of Motion, dated January 18, 2001.

of Mr. Weinstein and Mr. Losch] we have no reason to alter in any respect the original Report and Recommendation." Supp. Report at 2. Petitioner timely filed objections to the Supplemental Report by letter dated May 15, 2001 ("Objections to the Supplemental Report") ("After a careful review of the new Report Recommendation petitioner relies upon the original affidavit and pro se objection and the Supplemental letter that petitioner has raised a Substantial Constitutional Question.").

**For the reasons set forth below, the Court adopts Magistrate Dolinger's Report and Supplemental Report in all material respects and concludes that Petitioner's writ of habeas corpus should be denied.**

## II. Background

Following his conviction, Petitioner filed an appeal in the Appellate Division, First Department in or about June 1991. The Appellate Division affirmed the conviction on March 18, 1993. *People v. Flores,* 191 A.D.2d 306, 595 N.Y.S.2d 173 (N.Y.App. Div.1993) ("The prosecutor's asserted mischaracterization of the evidence is unpreserved for appellate review by timely objection, and we decline to review the issue in the interest of justice. Were we to

consider the argument, we would find it to be without merit.... The characterization of the defense as a smokescreen is within the bounds of fair comment.") (internal citations omitted). Petitioner thereafter sought leave to appeal to the New York State Court of Appeals on March 31, 1993. That application was denied on May 11, 1993. *People v. Flores,* 81 N.Y.2d 1013, 600 N.Y.S.2d 201, 616 N.E.2d 858 (1993). On July 14, 1993, Petitioner filed a motion in the Appellate Division for a writ of error *coram nobis.*[5] The First Department denied the *coram nobis* application on October 5, 1993. *People v. Flores,* 197 A.D.2d 940, 603 N.Y.S.2d 731 (N.Y.App. Div.1993) ("Writ of coram nobis denied.").[6]

Petitioner filed his initial petition for a writ of habeas corpus in this Court on June 23, 1994. On November 14, 1994, he requested that his petition be dismissed without prejudice and his request was granted by an order of U.S. District Court Judge John E. Sprizzo, dated November 22, 1994. *Flores v. Keane,* No. 94 Civ. 5906 (S.D.N.Y. November 22, 1994) ("[I]t is ordered that pursuant to Federal Rule of Civil Procedure 41(a), the above-captioned action shall be and hereby is dismissed against defendant Koppell."). Petitioner filed a second habeas corpus

---

**5.** " 'Writ of error coram nobis' is a procedural tool whose purpose is to correct errors of fact only, and its function is to bring before the court rendering the judgment matters of fact which, if known at the time judgment was rendered, would have prevented its rendition." *Black's Law Dictionary* 337 (6 th ed.1990). In support of his application, Petitioner argued that he had been denied the effective assistance of appellate counsel on his direct appeal. Report at 8. According to Flores, his attorney had failed to argue three points: "first, that his sentence was excessive; second, that his trial attorney had been constitutionally ineffective in failing to object to portions of the prosecutor's summation; and, third, that his right of confrontation had been violated when the prosecutor consulted with a

witness who had already begun to testify on cross-examination." Report at 8–9.

**6.** Petitioner filed a second *coram nobis* application in the Appellate Division, First Department, on June 20, 1996. In support of his application, Petitioner argued that "he had been denied the effective assistance of appellate counsel ... because the attorney had not asserted a claim based on the trial court having denied petitioner's challenge for cause with respect to one of the jurors." Report at 10. On December 17, 1996, the Appellate Division denied that application. *People v. Flores,* 234 A.D.2d 1018, 652 N.Y.S.2d 459 (N.Y.App.Div.1996) ("Writ of coram nobis denied.").

petition in this Court on April 17, 1995. Again, Petitioner asked that his petition be dismissed without prejudice and Judge Sprizzo granted that request also. *Flores v. Keane,* No. 94 Civ. 5906 (S.D.N.Y. April 1, 1996) ("[T]he above-captioned petition shall be and hereby is dismissed without prejudice.").

On August 20, 1997, Respondent moved to dismiss the instant Petition as time-barred by the one year limitations period imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(d)(1) and (2). By order dated May 7, 1998, Judge Sprizzo adopted a Report and Recommendation, dated January 26, 1998, written by Magistrate Judge Leonard Berkinow[7] ("Berkinow Report") and denied Respondent's motion to dismiss. *Flores v. Keane,* No. 94 Civ. 5906 (S.D.N.Y. May 7, 1998).[8] Magistrate Berkinow reasoned that "the one year statute of limitations period does not apply where ... the judgment of conviction became final before the effective date of the AEDPA, April 24, 1996." Berkinow Report at 4. Magistrate Berkinow stated that, in such cases, "the Second Circuit grants a petitioner a reasonable time after the enactment of the AEDPA to file his petition." *Id.* He also concluded that Petitioner's (nine month) delay in filing his habeas application was reasonable "in view of [his] efforts to exhaust state remedies."[9] *Id.*

---

7. The matter was reassigned to Magistrate Dolinger in October 1998.

8. Respondent thereafter filed a substantive response to the Petition. *See Respondent's Memorandum of Law,* dated July 1998 ("Resp.'s Brief"). Petitioner filed a brief in support of his Petition on August 6, 1998. *See* Brief for Petitioner, dated August 6, 1998, ("Pet.'s Brief").

9. In *Ross v. Artuz,* 150 F.3d 97 (2d Cir.1998), the U.S. Court of Appeals for the Second Circuit determined that prisoners whose con-

## III. Standard of Review

A district court evaluating a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Letizia v. Walker,* No. 97–CV–0333E(F), 1998 WL 567840, at *1 (W.D.N.Y. Aug. 27, 1998); *Pizarro v. Bartlett,* 776 F.Supp. 815, 817 (S.D.N.Y.1991). Where timely objections are made, the District Judge must make a *de novo* determination as to the objected to issues, but is not required to conduct a *de novo* hearing. *See Cespedes v. Coughlin,* 956 F.Supp. 454, 463 (S.D.N.Y.1997); *East River Sav. Bank v. Secretary of Hous. and Urban Dev.,* 702 F.Supp. 448, 453 (S.D.N.Y.1988). Thereafter, a district court may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994). The Court must liberally construe the claims of a *pro se* litigant. *See, e.g., Marmolejo v. United States,* 196 F.3d 377, 378 (2d Cir.1999).

The legal measure for habeas corpus relief is contained in 28 U.S.C. § 2254, as amended by the AEDPA,[10] which provides:

(d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

---

victions became final prior to the effective date of the AEDPA "should have been accorded a period of one year after the effective date of AEDPA in which to file a first [habeas] petition."

10. *See Lindh v. Murphy,* 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (holding that the AEDPA applies prospectively to "the general run of habeas cases only when those cases [have] been filed after the date of the Act."). **The Petition here was filed nine months after the AEDPA was enacted.**

court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1).

The reviewing court should "defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Kutzner v. Johnson,* 242 F.3d 605, 608 (5th Cir.2001) (citations omitted). Under the "contrary to" clause, a Federal habeas court may grant a writ "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law" or if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's decision]." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, "a

federal habeas court may grant relief if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." [11] *Id.,* 120 S.Ct. at 1523.

## IV. Procedural Bar

■ Respondent claims that Petitioner did not exhaust all available state remedies under 28 U.S.C. §§ 2254(b) and (c) by "fairly presenting the substance of his [due process claims regarding the prosecutor's summation] to the Appellate Division" and, therefore, Petitioner may not "bring [his] habeas corpus proceeding in federal court." (Resp.'s Brief at 16–17).[12] "[T]he petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney Gen. of the State of New York,* 696 F.2d 186, 191 (2d Cir. 1982). The Court believes Petitioner's due process claim is not procedurally barred.[13] Even "a minimal reference to the Fourteenth Amendment satisfies the exhaustion requirement." *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992); *see also Davis v. Strack,* 211 F.Supp. 377, 407 (S.D.N.Y.

11. The "contrary to" and "unreasonable application" inquiries do not apply "if the state court's decision did not make any reference to a federal constitutional claim by, for example, citing Supreme Court case law or state court precedents which themselves apply federal law." *Washington v. Schriver,* 240 F.3d 101, 108 (2d Cir.2001). In such instances, a claim cannot be said to be "adjudicated on the merits" in state court and, therefore, the court must "apply the pre-AEDPA standard of review. Pure questions of law and mixed questions of law and fact [are] reviewed de novo." *Id.* at 110.

12. *See Lambrix v. Singletary,* 520 U.S. 518, 524, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) ("[T]he procedural bar issue should ordinarily

be resolved first."). "[J]udicial economy sometimes dictates reaching the merits [before the procedural bar issue] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir.1999). Report at 12 ("We choose to bypass the procedural-bar argument and conclude that the summation claim is indeed meritless.").

13. Respondent claims that Petitioner "merely placed the words 'U.S. Const. Amend. XIV' in his point heading" and that this is inadequate to "alert the state court that it was to decide any federal constitutional issues regarding prosecutorial misconduct." (Resp.'s Brief at 17).

2000) ("Davis' constitutional argument was lodged in state court in that it was printed in a bold type heading in Davis' brief to the Appellate Division."). Here, Petitioner's constitutional argument was printed in capital letters in two headings in his brief to the Appellate Division. *See* Pet.'s App. Brief at 1, 17.

■ Respondent also argues that Petitioner's claim that the prosecutor "seriously misstated the evidence, and that these inaccuracies were so egregious as to deny him a fair trial," is also barred from review here because "this claim was not preserved by contemporaneous objection at trial." (Resp.'s Brief at 19). The Court agrees. The Appellate Division specifically found that this claim was "unpreserved for appellate review by timely objection." *Flores,* 191 A.D.2d at 307, 595 N.Y.S.2d 173. "Were we to consider [defendant's] argument, we would find it to be without merit. **Evidence was adduced from which the jurors could conclude that the decedent was stabbed after he had retreated and that the attack on the victim continued as he lay on the ground."** [14] *Id.* (emphasis added).

■ "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the procedural default or prejudice attributable thereto or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Avincola v. Stinson,* 60 F.Supp.2d 133, 145 (S.D.N.Y.1999) (cita-

tions omitted). "Cause" is established by showing that "some objective factor external to the defense impeded counsel's efforts' [to raise that claim in state court]." *Murray v. Carrier,* 477 U.S. 478, 479, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Such factors may include: "(1) outside interference that makes compliance with state procedural rules impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available to counsel; and (3) ineffective assistance of counsel." *Washington v. Superintendent, Otisville Correctional Facility,* 1997 WL 178616, at *6 (S.D.N.Y.1997). The "prejudice" requirement is satisfied by a showing of "actual prejudice resulting from the errors of which [petitioner] complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Actual prejudice is established when a petitioner demonstrates that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170, 102 S.Ct. 1584.

■ Here, Petitioner has failed to establish cause and prejudice. Petitioner has not alleged that some outside force prevented him or his attorney from objecting or that the legal or factual basis for objecting was not reasonably available at trial. Petitioner has alleged ineffective assistance of counsel, but, as indicated *infra* at 440, the Court finds no basis for concluding that trial counsel's conduct was constitutionally ineffective. *Murray,* 477 U.S. at 488, 106 S.Ct. 2639; *Simmons v.*

---

14. "A claim may be procedurally barred if the state court decision rested on an independent and adequate state law ground." *Salcedo v. Artuz,* 107 F.Supp.2d 405, 413 (S.D.N.Y.2000) (citing *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). This doctrine "applies to bar federal habeas [review] when a state court declined to address a prisoner's federal claim because the

prisoner had failed to meet a state procedural requirement." *Id.* In this case, the Appellate Division based its decision on the contemporaneous objection rule which "bars appellate review of any issue not objected to at trial." *Id.* This procedural bar is an independent and adequate ground for the state court's dismissal of Petitioner's claim regarding the prosecutor's summation. *Id.*

*Ross*, 965 F.Supp. 473, 479 (S.D.N.Y.1997) (where attorney's decision not to raise frivolous argument was not ineffective assistance of counsel; petitioner "failed to show cause for his procedural default.").

Petitioner is also unable to establish prejudice because, among other reasons, even if trial counsel had objected to the prosecutor's comments, Petitioner's challenge would have proved unsuccessful on appeal. For one thing, the Appellate Division said so. *Flores*, 595 N.Y.S.2d at 173 ("Were we to consider the argument, we would find it to be without merit."). For another, as the Report correctly notes, "[t]he quoted comments by the prosecutor, even with a few minor inaccuracies, did not mislead the jury, and plainly did not deny Flores a fundamentally fair trial." Report at 14. Petitioner has also failed to establish that "a fundamental miscarriage of justice would result from a failure to entertain [his] claim." *Superintendent, Otisville*, 1997 WL 178616, at *7. This exception is available where the petitioner can "support his allegations of constitutional error with new reliable—whether it be exculpatory scientific evidence … or critical physical evidence that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

## V. Analysis

The Court has conducted a review of the underlying record herein, the Report, the Supplemental Report, Petitioner's Objections to the Report and to the Supplemental Report, and the affidavits of Petitioner's appellate counsel, Steven C. Losch and Philip L. Weinstein. The Court adopts the Magistrate Judge's findings of facts, as they are supported by the record. The Court has undertaken a *de novo* review of the law and concludes that the Magistrate's legal conclusions are correct in all material respects. *Cespedes*, 956 F.Supp. at 463.

### A) Prosecutor's Comments on Summation

Assuming, *arguendo*, that Petitioner's claim regarding the prosecutor's alleged mischaracterization of witness testimony on summation were not procedurally barred, the Petitioner's habeas application should be denied because the prosecutor's comments "did not mislead the jury, and plainly did not deny Flores a fundamentally fair trial." Report at 14. Petitioner's claim that he was prejudiced by the prosecutor's comment "that the defense was like a frightened octopus clouding the water with black ink" is also rejected because the comment "did not affect in any way the fairness of the trial." Report at 23.

To establish a due process violation based on prosecutorial misconduct, a petitioner must show that in the context of the entire trial the prosecutor's conduct was so "substantially prejudicial" that petitioner was denied a fundamentally fair trial. *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir.1989). Factors to be considered in determining "substantial prejudice" include "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir.1990); *Tutino*, 883 F.2d at 1137. Applying this test, the Court finds, as the Report correctly concludes, that the prosecutor's remarks on summation did not prejudice the outcome. *See* Report at 14 ("[T]he purported misstatements by the prosecutor were, for the most part reasonable characterizations of the testimony of the eyewitnesses as a whole" and "plainly did not unfairly prejudice petitioner's

case."); *see also United States v. Shareef,* 190 F.3d 71, 79 (2d Cir.1999) (prosecutor's conduct not prejudicial where trial court "promptly admonished" prosecutor and "the evidence against [petitioner] was sufficiently strong."); *Lora v. Artuz,* No. 95 Civ. 6319, 1997 WL 249966, at *3 (S.D.N.Y. May 12, 1997) ("[N]one of [the prosecutor's comments] were so prejudicial as to deprive petitioner of due process.... Moreover, the judge's charge emphasized that the jury's verdict must be based solely on the evidence....").

*Severity*

■ Petitioner complains that the prosecutor's argument on summation "that all of the eyewitnesses had confirmed that Flores had stabbed a man who, at the time was essentially defenseless" and that "the evidence demonstrated an intent to kill, and thus justified a conviction for more than manslaughter" was "a gross distortion of the evidence." Report at 14–15. As the Report correctly notes, these comments, "even with a few minor inaccuracies, did not mislead the jury, and plainly did not deny Flores a fundamentally fair trial." Report at 17. Even if "only [one of the eyewitnesses] reported that the stabbing had been done while Amaro was prone rather than standing," any difference between this witness's statement and that of the other two eyewitnesses "was both highlighted by defense counsel's summation and acknowledged by the prosecutor." Report at 20. Because the prosecutor's comments involved at most "minor inaccuracies" in a "few" instances, the alleged misconduct was not "severe." *Tankleff v. Senkowski,* 135 F.3d 235, 253 (2d Cir.1998) (where prosecutor mischaracterized evidence on summation, "the severity ... was mitigated by the brevity and fleeting nature of the improper comments."); *Leslie v. Artuz,* 72 F.Supp.2d 267, 278 (S.D.N.Y.1999), *aff'd,* 230 F.3d 25 (2d Cir.

2000) ("[the prosecutor's] remarks represented either fair comment on the evidence, acceptable summation rhetoric, or [at worst] a minor misstatement of testimony not reasonably likely to create undue prejudice.").

■ The Court also agrees with the Magistrate's determination that the prosecutor's comments "that the defense was like a frightened octopus clouding the water with black ink" did not deny Petitioner a fundamentally fair trial. Report at 23 ("This interchange did not affect in any way the fairness of the trial."). "[A] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir.1995) (citations omitted); *see also Snow v. Reid,* 619 F.Supp. 579, 585 (S.D.N.Y.1985) ("This Court does not find prosecutor's remark that defense counsel were 'trying to cloud the waters' as squid and octopi are reputed to do, in the entire context of this trial record, to be anything more than useless bloviation in the tradition of a television crime show.").

*Measures to Cure*

■ The Report correctly notes that the trial judge's instructions to the jury "ensur[ed] that no unfairness pervaded the trial." Report at 22; *see also United States v. Espinal,* 981 F.2d 664, 666 (2d Cir.1992) ("[T]he overriding factor is the presence of curative measures each time they were necessary, though the certainty of Espinal's conviction absent the misconduct is also substantial."); *United States v. Cruz,* 797 F.2d 90, 93 n. 1 (2d Cir.1986) (affirming a conviction despite prosecutor's statement that "[t]he defense ... has to convince you," because it was cured by trial court's instructions). For one thing, the trial judge instructed the jurors in response to defense counsel's objection

during summation that "questions of recollection of the evidence are for you to determine on the basis of your recollection and if a statement is made by either Counsel in summation and it does not comport with your recollection, you [ ] can reject that statement." Trial Transcript, dated January 31, 1989 at 844–45 ("Tr."). Second, during his charge to the jury, the trial judge also instructed the jurors to "keep in mind with respect to the summations ... that you did not hear testimony or evidence [at] that portion of the trial, instead you were subject to hear rulings of law by the Court and arguments on the facts by the attorneys. Please rely on your recollections and your understanding and your evaluation of the evidence in deciding this case." (Tr. 933–934). The trial court again reminded the jurors that "[y]our recollections of the testimony must be your primary resource because your recollections not only have the words but have the way in which that testimony was offered and that's very important." (Tr. at 987a). Third, the prosecutor told the jurors that "[e]ach and every one of you has an absolute right, when you go to that jury room, to ask [that] the testimony be read back.... [Y]ou are the persons whose recollections controls [sic] in this case...." (Tr. at 854–55). The prosecutor also acknowledged during summation that there were differences of detail in the accounts of the three eyewitnesses as to "the manner in which the [Petitioner] came at Jose Amaro." (Tr. at 871).

The trial judge's instructions adequately cured any alleged misconduct and prevented substantial prejudice to the defendant. *See United States v. Parker*, No. SSS 88 Cr. 379, 1989 WL 38135, at *10 (S.D.N.Y. March 7, 1989) ("[T]his court's instructions, given immediately after the government's summation and again during the charge to the jury, adequately cured the [prosecutor's] misconduct.").

### Evidence of Guilt

■ There was strong (overwhelming) evidence of Petitioner's guilt at trial. *See, e.g., Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir.1991) (where "the evidence against petitioner was strong"); *United States v. Modica*, 663 F.2d 1173, 1182 (2d Cir.1981) (where "the case against appellant was overwhelming ... and his explanation was implausible and refuted."). The Report correctly notes that "the testimony overwhelmingly established that Flores had retrieved a knife from his car and used it to stab Amaro repeatedly, and that he had done so at a time when he was the sole aggressor and had manifested his intent to kill not only by his actions, but by his words." Report at 20. Three eyewitnesses testified against Petitioner, each of whom said that they witnessed Petitioner, with a knife or "shiny object" in his hand, make contact with Amaro in a manner that is consistent with a stabbing motion.[15] (Tr. at 62, 274–75, 575). Given the strength of the evidence against Petitioner, the prosecutor's comments on summation could not render the trial fundamentally unfair. *Darden*, 477 U.S. at 182, 106 S.Ct. 2464 (The "heavy" weight of the evidence against petitioner "reduced the likelihood

---

**15.** Eddie Pantoja testified that he saw Amaro put "both hands to [the] mid section of his stomach, slightly bent over and at the same time he saw the defendant thrusting forward several times." (Tr. at 62). Libio Sarango testified that Petitioner made contact with decedent's stomach by "pushing" him until he fell to the floor and then "hitting him."

(Tr. 274–75). Lorenzo Marzan testified that when Amaro was on the ground Petitioner "started to make a stabbing motion" about three or four times. (Tr. at 575). **Two of the three eyewitnesses also testified that they heard Petitioner threaten Amaro during the altercation with the words "I'm going to kill you."** (Tr. at 64, 279) (emphasis added).

that the jury's decision was influenced by argument.").

## AEDPA

 Petitioner raised his claims regarding the prosecutor's summation before the Appellate Division, which found them to be without merit. *Flores,* 191 A.D.2d at 306, 595 N.Y.S.2d 173 ("The prosecutor did not engage in exaggerated distortion of the testimony, nor does it appear that he acted in bad faith. Furthermore, the jury was clearly advised that its recollection of the testimony was controlling."). The Appellate Division cited *People v. Butler,* 185 A.D.2d 141, 585 N.Y.S.2d 751 (N.Y.App. Div.1992) and *People v. Ashwal,* 39 N.Y.2d 105, 383 N.Y.S.2d 204, 347 N.E.2d 564 (N.Y.App.Div.1976) in sustaining Petitioner's conviction. Petitioner's federal due process claim was, therefore, "adjudicated on the merits" by the state court and is, therefore, entitled to deference. *Schriver,* 240 F.3d at 107.

The Appellate Division's decision to deny Petitioner's claims regarding the prosecutor's alleged misconduct was not "contrary to or an unreasonable application of, clearly established federal law." *Williams,* 529 U.S. at 399, 120 S.Ct. 1495; *see also Davis v. Keane,* 2000 WL 1041454, *7–8 (S.D.N.Y. July 28, 2000) (state court's decision not "contrary to or an unreasonable application of, clearly established federal law" where state court found that "the prosecutor's comments ... were in direct response to repeated arguments made by defense ... the trial judge's instruction to the jury [cured] the alleged misconduct [and] ... the petitioner almost certainly would have been convicted, even absent the alleged misconduct."). The Report correctly concluded that: (i) the prosecutor's comments were not "of such severity as to distract the jury from the issues in the case" and "plainly did not prejudice

petitioner;" (ii) the trial judge gave "repeated reminders ... that the jurors' recollection controlled and that they could have testimony read back;" and (iii) the evidence "overwhelmingly established" Petitioner's guilt. Report at 20–23; *see also Concepcion v. Portuondo,* 97 Civ. 3183, 1999 WL 604951, at *5 (S.D.N.Y. Aug. 10, 1999) (state court's decision not contrary to or an unreasonable application of clearly established federal law where comments "were tempered by [ ] judicial interventions ... were not so severe as to have deprived petitioner of a fair trial ... [and where] the evidence against the petitioner was overwhelming.").

## B) Ineffective Assistance of Appellate Counsel

 The Report and Supplemental Report also correctly recommend that Petitioner's ineffective assistance of appellate counsel claim be denied. Report at 24 ("We conclude that Petitioner's complaints about his appellate attorney are meritless."); Supp. Report at 3 ("We refer the Court to [the Report], and reiterate our recommendation that the writ be denied and the petition dismissed with prejudice."); *see also* Losch Aff. at 1 ("I do not believe that Mr. Flores was denied effective assistance of counsel under the *Strickland v. Washington* standard ..."). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish two elements, namely: (i) that counsel's performance "fell below an objective standard of reasonableness," and (ii) that there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The same standard applies to a review of the effectiveness of appellate counsel." *McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999). A court must

"indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669, 104 S.Ct. 2052. Appellate counsel's performance will not be deemed unreasonable merely because he failed to "advance every nonfrivolous argument...." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). Rather, counsel may focus on key issues and "winnow[ ] out weaker arguments." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The petitioner may establish constitutionally inadequate performance if he shows that appellate counsel omitted "significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. This is not the case here.

■■■ Petitioner argues that appellate counsel was ineffective because he failed to challenge on appeal: 1) the trial court's refusal to sustain a "for cause" challenge to a juror, and 2) the ineffectiveness of the trial attorney.[16] As the Report and the Supplemental Report correctly conclude, however, "none of Petitioner's complaints about his appellate attorney reflects a denial of his Sixth Amendment right to effective representation." Report at 27; *see also Wise v. United States*, 93 Civ. 2930, 1995 WL 51113, at *6 (S.D.N.Y. Feb. 9, 1995) ("petitioner has failed to demonstrate that his counsel was deficient for failing to raise [various issues] on appeal."). Appellate counsel filed a twenty-five page brief arguing for the reversal of Petitioner's conviction. "[T]he prosecutor denied appellant a fair trial when he created the false impression in his closing argument that all of his eyewitnesses saw ap-

pellant threaten to kill the deceased and then repeatedly stab him on the ground, and denigrated the defense." (Pet.'s App. Brief at 1–2). He raised non-frivolous arguments. *Mayo*, 13 F.3d at 533 (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices."). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*. The issues Petitioner contends should have been raised by appellate counsel are devoid of merit, as follows:

**Juror Selection**

■■■ During voir dire, one juror reported that "an aunt of his wife had been repeatedly stabbed the year before." Report at 28. When the trial judge asked the juror whether this event would "impact on your participation in the case," the juror responded, "of course not." The juror confirmed that he could be "fair and impartial." *Id*. And, while the trial court denied (appropriately) Petitioner's for cause objection, **the juror was excused as a result of a peremptory challenge by Petitioner.** *Id*. (emphasis added).

The Magistrate correctly concluded that "given this set of circumstances, it can scarcely be said that an appellate challenge to the court's ruling had any prospect of success." Report at 29. For one thing, under New York Criminal Procedure Law § 270.20(2), a ruling denying a challenge for cause is only reviewable on appeal if the ruling were made at a time when the defendant had exhausted his peremptory challenges or he subsequently exhausted those challenges without excusing

---

**16.** Petitioner contends that his appellate counsel should have raised his trial attorney's failure to object to: (i) the prosecutor's summation; (ii) Petitioner's exclusion from side bar conferences during voir dire; (iii) the prosecutor's leading questions; and (iv) the prosecutor's conversation with a witness after cross-examination had begun. (Pet.'s Brief at i-ii).

the juror in question. *See* N.Y.Crim. Pro. § 270.20; *see also People v. Rodriguez,* 242 A.D.2d 475, 475, 662 N.Y.S.2d 478 (N.Y.App.Div.1997). Second, "it does not appear that any such claim would have had any realistic chance on appeal." Report at 30. The determination of a challenge for cause is a matter "left largely to the discretion of the trial court." *People v. Callaghan,* 220 A.D.2d 609, 609, 633 N.Y.S.2d 46 (N.Y.App.Div.1995). Here, the trial court "made specific findings ... that the juror had vigorously affirmed his ability ... to follow the judge's instructions." Report at 30; *see also People v. Gayle,* 238 A.D.2d 133, 133, 655 N.Y.S.2d 513 (N.Y.App.Div. 1997), *appeal denied,* 90 N.Y.2d 893, 662 N.Y.S.2d 436, 685 N.E.2d 217 (1997) (upholding trial court's decision to deny a for cause challenge to a prospective juror where "[t]he juror's responses to the court's inquiries, taken as a whole, demonstrated that she could render an impartial verdict based on the evidence."). Appellate counsel was correct, therefore, that:

> Mr. Flores was not prejudiced by my failure to raise the only claim of voir dire error that he alleged. The juror was clearly qualified under the abuse of discretion standard of review or a de novo standard. The alleged error was unpreserved and harmless because trial counsel did not exhaust his peremptory strikes. **If I had reviewed the record, there is no chance that I would have raised such a patently frivolous claim.**

Losch Aff. at 1 (emphasis added).

**Ineffective Assistance of Trial Counsel**

As the Magistrate correctly determined, Petitioner has failed to demonstrate that trial counsel's conduct "fell below an objec-

tive standard of reasonableness," or that there was a "reasonable probability" that the outcome of the trial would have been different. *See* Report at 31; *see also Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. First, as already noted, the prosecutor's comments on summation did not "substantially prejudice" Petitioner's case and, therefore, did not amount to a due process violation. *Supra* at 435. Accordingly, appellate counsel's decision not to challenge trial counsel's failure to object to the prosecutor's comments was not unreasonable. *See* Report at 31; *see also Franza v. Stinson,* 58 F.Supp.2d 124, 148 (S.D.N.Y.1999) ("Trial counsel's decision not to move for a mistrial based on the prosecutor's comments was tactical and did not amount to ineffective assistance. Certainly, appellate counsel was not ineffective for failing to raise the issue.").

Second, as the Magistrate correctly observed, "at the time of Petitioner's trial, [in 1989], New York law did not require the presence of the defendant at sidebar voir dire interviews of potential jurors." [17] Report at 32. *See, e.g., People v. Parker,* 132 A.D.2d 629, 630, 517 N.Y.S.2d 783 (N.Y.App.Div.1987), *appeal dismissed* 71 N.Y.2d 887, 527 N.Y.S.2d 765, 522 N.E.2d 1063 (1988) (defendant's absence during questioning of potential jurors before jury selection "did not deprive [defendant] of his ... right to be present during trial."); *People v. Ganett,* 68 A.D.2d 81, 87, 416 N.Y.S.2d 914 (N.Y.App.Div.1979) *affirmed* 51 N.Y.2d 991, 435 N.Y.S.2d 976, 417 N.E.2d 88 (1980) (where side bar conferences were conducted with potential jurors in defendant's absence, "defendant failed to demonstrate ... any prejudice."). "Pe-

---

**17.** It was not until 1992 that the New York State Court of Appeals held, in *People v. Antommarchi,* 80 N.Y.2d 247, 250, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992), that defendants were entitled to be present at sidebar voir dire

of potential jurors, a decision the Court later found to apply only prospectively. *People v. Mitchell,* 80 N.Y.2d 519, 524, 591 N.Y.S.2d 990, 606 N.E.2d 1381 (1992).

titioner's direct appeal was in 1991, [so] there would have been no basis for a claim on appeal that the exclusion of Petitioner was trial-court error." Report at 33. As the Magistrate noted, "the assertion on Flores's appeal of a Sixth Amendment claim on this basis would have been futile." *Id.*

 Third, the decision of any trial attorney to object to individual questions (e.g. as "leading") is "evidently tactical," and a court may not "second-guess the lawyer's on-the-spot decisions." Report at 34 ("[A]n attorney might choose not to object to some leading questions for several colorable reasons, including a desire not to appear obstructionist."); *see also Boyd v. Hawk*, 965 F.Supp. 443, 452 (S.D.N.Y. 1997) ("Counsel's ... alleged failure to make objections ... may be attributed to counsel's trial tactics."). Here, trial counsel specifically told the trial judge that he "purposely did not object" to the prosecutor's leading questions.[18] (Tr. at 87–88). Further, there is no reasonable probability that the outcome of the case would have been different had counsel objected. *See Solimany v. United States*, No. 99–CV–0862E(F), 2000 WL 1160457, at *2 (W.D.N.Y. Aug. 11, 2000) ("[T]here was no reasonable probability that the outcome of the case would have been different had there been objections to leading questions."). As Magistrate Dolinger correctly noted, "there was overwhelming evidence of petitioner's guilt, and in any event, if the attorney had objected, the prosecutor

could have simply rephrased the questions." Report at 34. The Magistrate correctly found that it was reasonable for appellate counsel to forgo raising this argument on appeal "since Petitioner could not have shown a reasonable probability that the trial lawyer's failure to object altered the outcome of the trial." Report at 34; *see also Duncan v. Griener*, No. 970 Civ. 8754, 1999 WL 20890, at *10 (S.D.N.Y. Jan. 19, 1999) (since trial counsel's objection would have been "fruitless," the failure to object "is not evidence of ineffective assistance of counsel.").

 Fourth, the Magistrate properly found that, although the prosecutor's consultation with a witness "was at least technically improper," Petitioner was not prejudiced by the encounter because: "the prosecutor insisted that he had not coached the witness as to what to say during cross examination;" the trial judge "fully explored the extent and the implications of the prosecutor's conduct;"[19] and "there was no indication that the witness's testimony on cross had been influenced, or that the prosecutor had obtained an unfair advantage in preparing his redirect examination." Report at 36–37; *see also United States v. Bautista*, 23 F.3d 726, 731 (2d Cir.1994) (contact of prosecutor with a witness during an adjournment of testimony at a pre-trial evidentiary hearing did not "rise to the level of a constitutional violation").

---

**18.** Trial counsel's comment was made during the following colloquy:

> The Court: I would like the record to reflect that I have not interrupted the District Attorney's last series of questions which included many leading [questions] because there was no objection by Defense Counsel to any of those questions.
>
> Mr. Morris: I understand, Your Honor.... I purposely did not object.

(Tr. at 88).

**19.** The trial judge asked the prosecutor whether he had "designed questions of [the] witness based upon interviews after [the defense attorney] commenced cross-examination." (Tr. at 486). The prosecutor responded that he "did not have a conversation about what [the witness's] testimony was yesterday." (Tr. at 484–85).

### AEDPA

Arguably, Petitioner's ineffective assistance of appellate counsel claims, which were brought on two motions/applications in the Appellate Division, First Department for a writ of error *coram nobis* and summarily denied,[20] were not "adjudicated on the merits." *Schriver*, 240 F.3d at 110. The Appellate Division's opinion in both cases, consisting of one sentence: "Application for writ of coram nobis denied," did not "make any reference to a federal constitutional claim by, for example, citing Supreme Court case law or state court precedents which themselves apply federal law." *Id.* at 108. Therefore, this Court has applied "the pre-AEDPA standard of review [to this claim]. Pure questions of law and mixed questions of law and fact [have been] reviewed de novo." *Id.* at 110. The result of said review is that Petitioner was not denied effective assistance of appellate counsel. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Had the AEDPA (deference) standard of review been applied, the result would have been the same. The Appellate Division's decision to deny Petitioner's ineffective assistance of appellate counsel claims was not "contrary to or an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(4). The Report correctly found that appellate counsel's decision to forgo certain claims on appeal was not "so unreasonable as to amount to professional incompetence." Report at 37; *see so Avincola*, 60 F.Supp.2d at 165 ("there is no indication that [prosecutor's alleged misconduct] affected Avincola's trial or appeal."). Nor was Petitioner able to demonstrate a substantial probability that "if these arguments were aired on appeal the result of the appeal would have differed." *Id.; see also Todd v. Senkowski*,

No. 98 Civ. 7025, 1999 WL 335813, at *7 (S.D.N.Y. May 24, 1999) (where petitioner made no showing of a reasonable probability of success on appeal, "state court's decision denying the [prosecutorial misconduct claim] was [not] an unreasonable application of clearly established federal law.").

## VI. Objections

Petitioner raises what appear to be twelve objections to the Report, none of which is persuasive nor, in any way, alters the conclusion that the Petition should be dismissed. Although the substantive basis for denial of a writ is outlined above and in the Report and Supplemental Report, the Court here comments briefly on each objection.

(i) Petitioner argues that the Magistrate should have applied "the proper standard for reviewing summation issues from the State Court in *Floyd v. Meachum*." (Pet.'s Obj. at 3). Magistrate Dolinger did, in fact, apply the *Floyd* test for determining "substantial prejudice." Report at 12 ("Even if the challenged statements were improper, the court must determine whether they denied defendant a fair trial. In making this assessment, we look at 'the seriousness of the misconduct, the measures adopted by the trial court to cure the misconduct, and the certainty of conviction absent the improper statements.' "). Other cases cited by Petitioner are distinguishable from the instant matter because they involved severe prosecutorial misconduct. *See Washington v. Hofbauer*, 228 F.3d 689, 699 (6th Cir.2000) (prosecutor "went far beyond the bounds of permitted conduct" by introducing evidence of defendant's "bad character" during summation); *United States v. Friedman*, 909 F.2d 705, 709 (2d Cir.1990) ("[T]he prosecutor man-

---

**20.** *See* notes 5 and 6 *supra* and related discussion in text. This claim was not asserted in

Petitioner's direct appeal to the Appellate Division.

aged in one breath to undermine the presumption of innocence, the Government's obligation to prove guilt beyond a reasonable doubt, and the standards of propriety applicable to public prosecutors."); *Boyle v. Million*, 201 F.3d 711, 718 (6th Cir.2000) ("[T]he prosecutor's efforts to equate the jurors with the defendant's victim ... and to play upon the defendant's relative advantages in power, wealth, and prestige could not help but prejudice the jury against defendant.").[21]

(ii) To support his objection that "the Appellate Court's determination [regarding the prosecutor's 'octopus' comment] was contrary to clearly established Federal Law," Petitioner cites three cases. None of these cases involves the kinds of claims raised by Petitioner in the instant case. *See Francis v. Stone*, 221 F.3d 100, 113 (2d Cir.2000) (state court's decision to recommit plaintiff for mental health treatment nine years after he entered a plea of "not responsible by reason of mental disease or defect" was not objectively unreasonable); *Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir.2000) (decision by a state trial judge that defendant was not entitled to competency hearing was unreasonable); *Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir.2000) (state court's determination that admission of evidence seized in violation of the Fourth Amendment was harmless error was contrary to clearly established United States Supreme Court precedent).

(iii) Petitioner claims he was denied "the effective assistance of counsel at the trial level." (Pet.'s Obj. at 4). As noted at 439 *supra*, the Magistrate correctly applied the *Strickland* standard and properly determined that Petitioner "fails to demonstrate any violation of his Sixth Amendment rights."[22] Report at 31–36; *see also Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

(iv) Petitioner's fourth objection is that appellate counsel was ineffective because he did not argue that the trial court improperly denied his for cause challenge of a prospective juror. (Pet.'s Obj. at 4–5). As noted at 439 *supra*, the Magistrate correctly concluded that "it can scarcely be said that an appellate challenge to the court's ruling had any prospect of success" because "Flores exercised a peremptory challenge to excuse the juror and he never exhausted his pool of challenges." Report at 29–30. Moreover, the instant case is clearly distinguishable from those cases cited by Petitioner. *See, e.g., United States v. Polichemi*, 201 F.3d 858, 865 (7th Cir.2000) (excuse of juror for cause warranted where defendants exhausted their pool of peremptory challenges and attorneys were forced to seat jurors "to whom they would have objected"); *United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000) (potential juror's "equivocal" responses about her ability to be impartial, among other things, required an excuse for cause); *Dyer v. Calderon*, 151 F.3d 970, 976 (9th Cir.1998) (potential juror lied dur-

---

**21.** Petitioner also cites (two) additional cases which also support the Magistrate's findings. *See Portuondo v. Agard*, 529 U.S. 61, 65, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) ("prosecutor's comments on [defendant's] presence [at trial] and on the ability to fabricate that it afforded him" did not "unlawfully burden[ ] [defendant's] Sixth Amendment right to be present at trial and to be confronted with the witnesses against him"); *Evans v. Artuz*, 68 F.Supp.2d 188, 202 (E.D.N.Y.1999) (finding that the prosecutor's argument that the defen-

dant had "tailored and re-tailored his version of events to fit the proof of guilt confronting him" did not violate due process).

**22.** *Mason v. Scully*, 16 F.3d 38 (2d Cir.1994), and *Flores v. Demskie*, 215 F.3d 293 (2d Cir. 2000), both cited by Petitioner to demonstrate "the proper standard for ineffective assistance in a State proceeding," also apply the *Strickland* standard.

ing voir dire when she answered "no" to the question "Have you or any of your relatives ... ever been the victim of any type of crime?" and was subsequently placed on the jury); *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998) (where double jeopardy claim that appellate counsel failed to raise on appeal was "well-established, straightforward, and obvious," counsel's failure to raise the issue "could not reflect a plausible strategy to pursue more promising ground.").

■ (v) Petitioner also objects that "questioning [a prospective juror] in open court amounted to a denial of an impartial jury" because this juror's comments "prejudiced the panel." (Pet.'s Obj. at 5). This objection is untimely. Petitioner did not raise this claim before the Magistrate; nor was the claim presented in the Petition or in any previous filing by Petitioner in state or Federal court. *See Abu–Nassar v. Elders Futures, Inc.*, No. 88 Civ. 7906, 1994 WL 445638, at *5 n.2 (S.D.N.Y. Aug. 17, 1994) ("These arguments were not raised before [the Magistrate judge], and are not submitted as objections but as new arguments. Accordingly, plaintiffs' arguments and evidence are untimely."). Even if Petitioner's claim were properly raised, it would be unpersuasive. *See* discussion at 439 *supra*. A trial court's finding of juror impartiality may "be overturned only for manifest error." *Mu'Min v. Virginia*, 500 U.S. 415, 428, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); *see also United States v. Wey*, 895 F.2d 429, 431 (7th Cir.1990) (jury panel not contaminated by remarks of prospective juror that he had "purchased merchandise from a firm that the FBI helped to put out of business" and that "there is a parallelism" with the charges against defendant); *Henry v. Beyer*, Civ. A. No. 90–4199, 1991 WL 87582, at *6 (D.N.J.1991) (defendant not prejudiced by potential juror's (mistaken) comment during voir dire

that he had been involved in an altercation with defendant). *Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir.1997), cited by Petitioner, is clearly distinguishable. *Id.* at 633 ("Given the nature of [the potential juror's] statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated, we presume that at least one juror was tainted.").

(vi) Petitioner objects to his "trial counsel['s] failure to object to the summation, of the State Prosecutor [and, in particular, the prosecutor's] improper vouching for witness testimony." (Pet.'s Obj. at 5–6). As noted at 435 *supra*, the Magistrate correctly concluded that the prosecutor's comments on summation did not "substantially prejudice" Petitioner's case. Report at 17. Petitioner has failed to demonstrate that trial counsel's failure to object to the prosecutor's comments "fell below an objective standard of reasonableness," or that there was a "reasonable probability" that the outcome of the trial would have been different. *See* Report at 31; *see also Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Perez v. United States*, 96 Civ. 7702, 1997 WL 661426, at *4 (S.D.N.Y. Oct. 23, 1997) ("Defense counsel's failure to object [to the prosecutor's summation] cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless.").

■ (vii) Petitioner objects that his exclusion from sidebar conferences during voir dire "was contrary to clearly established Federal Law" and cites *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (trial judge's denial of permission to defendant to accompany jury on a view of crime scene was not a "denial of due process"). Petitioner also argues that it was

"unprofessional error for his trial attorney not to insist on his client's presence." (Pet.'s Obj. at 6–7). Petitioner's objection is unavailing. The Supreme Court in *Snyder* held that the defendant's presence at trial is required "to the extent that a fair and just hearing would be thwarted by his absence." *Snyder*, 291 U.S. at 108, 54 S.Ct. 330. As the U.S. Court of Appeals for the Second Circuit observed in *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir.2000), "[w]hile the scope of the right [to be present at all material stages of trial] is broad, its application is not absolute." *Id.* at 322. Petitioner's exclusion from sidebar, not at the time contrary to New York law, was not "contrary to" the Supreme Court's holding in *Snyder*. *See Mitchell*, 80 N.Y.2d at 524, 591 N.Y.S.2d 990, 606 N.E.2d 1381 ("We conclude *People v. Antommarchi* [holding that defendants were entitled to be present at sidebar conferences during jury voir dire] should be applied prospectively only.").

Petitioner cites several distinguishable cases involving a criminal defendant's right to be present at his trial. *See, e.g., Clark*, 214 F.3d at 324 (petitioner voluntarily and knowingly waived his right to be present at pre-trial hearing by failing to attend); *see also Smith v. Mann*, 173 F.3d 73, 76 (2d Cir.1999). Two other cases cited by Petitioner involve claims different than those raised here. *See Gardner v. Barnett*, 199 F.3d 915, 921 (7th Cir.1999) (trial court's refusal to voir dire potential jurors on four out of five of the questions he submitted did not violate defendant's Sixth Amendment right to be tried by an impartial jury); *United States v. Maragh*, 174 F.3d 1202, 1206 (11th Cir.1999) (court must obtain explicit consent from all parties before referring voir dire to a magistrate).

*Cardinal v. Gorczyk*, 81 F.3d 18 (2d Cir. 1996) does not support Petitioner's claim. *Id.* at 19 (defendant waived his right to observe individual voir dire by not asserting that right at trial).

(viii) Petitioner objects to the Magistrate's determination that "Petitioner's complaint about the trial attorney's failure to object to some leading questions is equally meritless." (Pet.'s Obj. at 7). *See* Report at 33. This Court has examined Petitioner's claim at 441 *supra* and determined that Petitioner failed to show "a reasonable probability that the trial lawyer's failure to object altered the outcome of the trial." *See* Report at 34. *Leslie v. Artuz*, cited by Petitioner, is supportive of the Report. *Leslie*, 72 F.Supp.2d at 278 (where prosecutor was accused of mischaracterization of evidence, "[i]n each instance, the [prosecutor's] remarks represented either fair comment on the evidence, acceptable summation rhetoric, or [at worst] a minor misstatement of testimony not reasonably likely to create undue prejudice to [the] defendant.").

(ix) Petitioner objects that "the Magistrate Judge did not allow appellate counsel to provide and [sic] affidavit outlining his reasoning for not objecting." (Pet.'s Obj. at 7). In *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir.1998), the Second Circuit held that "a district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence in the form of live testimony, affidavits, or briefs." [23] *Id.* This objection has been resolved by the Court's March 29, 2001 Order and subsequent filings of the Supplemental Report, affidavits

---

**23.** "This procedure ... might not be necessary in a highly unusual case where no plausible explanation for an attorney's actions exists. In such a situation, a remand can only be a waste of judicial time." *Jackson*, 162 F.3d at 86.

from appellate counsel Steven C. Losch and Philip L. Weinstein, and Petitioner's Objections to the Supplemental Report.

 "[B]ased on [the submissions of Mr. Weinstein and Mr. Losch] we have no reason to alter in any respect the original Report and Recommendation." Supp. Report at 2 ("We refer the Court to [the original Report and Recommendation], and reiterate our recommendation that the writ be denied and the petition dismissed with prejudice."). As noted at 430 *supra,* Mr. Losch responded by affidavit dated April 26, 2001. Losch Aff. at 1. Mr. Losch reports that he "did not order a transcript of the voir dire from the petitioner's trial, apparently because, upon being quizzed by [Mr. Losch] neither the trial attorney nor the petitioner indicated that there had been any voir dire error." Supp. Report at 2. "If I had reviewed the record, there is no chance that I would have raised such a patently frivolous claim." Losch Aff. at 1.

The Report is correct that "it is patently apparent that Flores was represented at all pertinent stages. As Losch makes clear, the decision not to acquire the voir dire transcript reflected a judgment call by the Legal Aid Society, and is obviously not tantamount to the denial of any counsel to the client." Supp. Report at 3.

(x) Petitioner objects that "Magistrate [j]udge's decision to address the issue in the absence of trial counsel affidavit was improper and not entitled to the presumption of correctness since it raised a mix question of law and facts." (Pet.'s Obj. at 7). This objection is unpersuasive because, among other reasons, trial counsel, Alvin Morris, is deceased, and the Court must "examine the available evidence." *United States v. Childress,* 58 F.3d 693, 736 (D.C.Cir.1995) ("We recognize that the district court's inquiry will be complicated immeasurably by [requested trial counsel's] death. We ask only that the district court examine the available evidence [to determine whether defendant was denied the right to counsel of choice].").· Such examination occurred in the instant case.

(xi) Petitioner's eleventh objection reiterates his claim that appellate counsel was ineffective because he failed to raise "that the State Prosecutor had spoken with his witness after the proceeding were adjourned." (Pet.'s Obj. at 8). This Court has examined and rejected this claim at 442 *supra. See also* Report at 36–37 ("[T]he prosecutor insisted that he had not coached the witness as to what to say during cross examination;" the trial judge "fully explored the extent and the implications of the prosecutor's conduct;" and "there was no indication that the witness's testimony on cross had been influenced, or that the prosecutor had obtained an unfair advantage in preparing his redirect examination."). Petitioner's reference to *United States v. Bautista,* is unavailing. *Bautista,* 23 F.3d at 731 (contact of the prosecutor with a witness during adjournment of testimony at pretrial evidentiary hearing did not "rise to the level of a constitutional violation."); *see also* Report at 36.

 (xii) Petitioner also requests a Certificate of Appealability.[24] (Pet.'s Obj. at 8–9) ("[I]f this Court determines that petitioner's three claims, the Prosecutor Summation, and the Ineffective Assistance of Appellate Counsel, and trial counsel should be dismissed, [sic] a Certificate of Appealability should be issued herein."). 28 U.S.C. § 2253(c)(2) provides that a Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

---

**24.** The filing of objections should be construed as an application for a certificate of appealability. *See Grune v. Coughlin,* 913 F.2d 41, 44 (2d Cir.1990).

Petitioner must demonstrate " 'that the issues [on the appeal] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.' " *Nelson v. Walker*, 121 F.3d 828, 832 (2d Cir. 1997); *see also Slack v. McDaniel*, 529 U.S. 473, 475, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (certificate of appealability should issue where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") Petitioner has clearly failed to make a substantial showing of violation of a constitutional right. Nor has he demonstrated that a reasonable jurist would find that Magistrate Dolinger's (or this Court's) assessment of his constitutional claims here are debatable. This Court, therefore, declines to issue a Certificate of Appealability. *See Stokes v. United States*, No. 00 Civ. 1867, 2001 WL 29997, at *9 (S.D.N.Y. Jan. 9, 2001) (where petitioner "failed to make a substantial showing that he was denied a constitutional right, [and, therefore,] this Court will not issue a certificate of appealability.").

## VII. Conclusion

For the reasons stated herein, the Court adopts the Magistrate's Report and Supplemental Report in all material respects and for the reasons stated therein and herein: (i) Petitioner's request for a writ of habeas corpus is denied and (ii) the Court declines to issue a Certificate of Appealability. The Clerk is respectfully requested to dismiss the case.